[L.A. No. 30029. In Bank. Mar. 15, 1973.]

Estate of DALE SMITH, Deceased.
DULCIE MAY SMITH, et al., Petitioners and Appellants, v.
RALPH R. ATKINSON, as Executor, etc., et al.,
Claimants and Respondents.

---

## COUNSEL

Long & Jaskulski and George Edwin Long for Petitioners and Appellants.

Lauren M. Handley and Donald G. Durbin, Jr., for Claimants and Respondents.

---

## OPINION

**THE COURT.**—Dulcie May Smith and Deidre Armyne Lee Smith, appeal from an order determining interests in the estate of Dale Smith, deceased, against their claims as surviving spouse and pretermitted heir and in favor of the beneficiaries named in his will.

Dale Smith was a merchant seamen who travelled around the world 10 or 11 months each year. In his travels, he managed to get married at least three times. He married Mary Frew in 1931 in Kansas, Dulcie May in 1948 in Australia, and Victoria Jo Johnson in 1955 in Nevada. Deidre, the daughter of Dale and Dulcie May, was born in 1950 in Australia.

A search of the records in Kansas, Missouri, California, and Nevada, failed to turn up any evidence of the existence after 1945 of Dale's first known wife, Mary Frew. There is no evidence of a divorce between Dale and Mary Frew and no evidence of her death.

There is also no documentary evidence of a divorce between Dale and his second known wife, Dulcie May. Dale had spoken about a divorce from Dulcie May to his sisters, telling one that he wanted a divorce from Dulcie May and the other that Dulcie May had divorced him.

The only evidence of a divorce from Victoria Jo is a reference to a divorce in the will. It is not known whether Victoria Jo is alive.

There is also evidence that Dale believed that Deidre had been adopted

by someone variously described as her maternal grandmother or her mother's second husband, named either Smith or Chapman. Dale told his sisters that Deidre was adopted, mentioning her adoption to his sister Minnie Lloyd two months before his death.

Dale died on May 1, 1968. His will, executed in a hospital less than two weeks before his death, provided in pertinent part:

"1. I hereby declare that I am divorced from Victoria Jo and I have no children by my marriage and I specifically leave nothing to my divorced wife Victoria Jo.

"2. I hereby give the following specific gifts:

"(a) To my sister Minnie Lloyd $1,000.00

"(b) To my grand niece Laura Hess $1,000.00

"(c) To my niece in law Thelma Atkinson $3,000.00.

"3. I hereby give and bequeath the rest and residue of my property and estate of whatever kind or character of which I may die, seized or possessed to my nephew Ralph R. Atkinson, but for [sic] if any of my friends or relatives challenge this my last will and testament I give to everyone of them the sum of $1.00 only."

Nora Reynolds, Dale's sister, unnamed in the will, objected to the distribution provided for in the will and an agreement of compromise was entered into among the heirs providing that the gift to Thelma Atkinson would be reduced to $1,000 and that the balance of the estate, amounting to approximately $25,000, which had been given to Ralph Atkinson, be divided equally among Nora Reynolds, Minnie Lloyd and Ralph and Thelma Atkinson.

Dulcie May and Deidre, who live in Australia, also objected to the distribution of Dale's estate provided for in his will. No settlement was reached. Both Dulcie May and Deidre were represented by an attorney at the hearing on their objection, but neither personally appeared before the court. At the hearing, Deidre offered no evidence proving that she was not adopted, and Dulcie May offered no evidence proving that she was not divorced from Dale.

At the conclusion of the hearing, Dulcie May's attorney asked for a continuance to bring Dulcie May before the court to rebut the evidence, admitted over objection, of Dale's marriages to Mary Frew and Victoria Jo, and to show that Dulcie May had not been divorced. The motion for a continuance was denied.

The trial court, without a jury, found that Dale had been divorced from Mary Frew, Dulcie May and Victoria Jo and thus concluded that Dale was a single man upon his death. ■ The court also found that Deidre was Dale's daughter but concluded that Deidre was not Dale's pretermitted heir since "At and shortly before the time decedent's Will was executed he was aware of and referred to the existence of Deidre Armyne Lee Smith and he knew that she was his daughter, and he intentionally omitted to provide for her in his Will." We hold that this conclusion is erroneous.

Section 90 of the California Probate Code, provides in pertinent part "When a testator omits to provide in his will for any of his children . . . unless it appears from the will that such omission was intentional, such child or such issue succeeds to the same share in the estate of the testator as if he had died intestate."

We interpreted section 90 in *Estate of Torregano,* 54 Cal.2d 234 [5 Cal.Rptr. 137, 352 P.2d 505, 88 A.L.R.2d 597]. In that case the testator left a will which provided in the second clause " 'I declare that I am a widower and that I have no children, issue of my marriage; that my deceased wife's name was Pearl C. Torregano; that my entire estate is separate property . . . .' " (at p. 239) and which provided in the 13th clause " 'I give, devise and bequeath to any person or persons who may contest this my Last Will and Testament, or assert any claim to share my estate by virtue of relationship or otherwise the sum of One Dollar ($1.00) each in settlement of their said claim or claims.' " (At p. 239.) There was no mention in the will of any marriage to one other than Pearl and no reference to any children of the testator.

Gladys Torregano, claiming to be the daughter of the testator by a marriage previous to the marriage to Pearl, petitioned for a determination of interest in the estate alleging that she was Torregano's pretermitted heir under section 90. At the hearing on her petition, Gladys submitted evidence which, if believed by the jury, would have established that she was Torregano's daughter but that he thought she and her mother had died 32 years before the execution of his will.

After hearing all the evidence, but before giving the case to the jury, the trial court found that, as a matter of law, Gladys was not the pretermitted heir of the testator and dismissed Gladys' action. We concluded that the trial court acted improperly.

We reiterated the well known rule that under section 90, a child of the testator is disinherited only when the intent to disinherit the child ap-

pears in strong and convincing language on the face of the will. (54 Cal.2d at p. 249; *Estate of Trickett*, 197 Cal. 20, 23 [239 P. 406]; *Estate of Lindsay*, 176 Cal. 238, 239 [168 P. 113]; *Estate of Hassell*, 168 Cal. 287, 288 [142 P. 838]; *Estate of Ross*, 140 Cal. 282, 291 [73 P. 976]; *In re Salmon*, 107 Cal. 614, 616-617 [40 P. 1030]; *Rhoton v. Blevin*, 99 Cal. 645, 646-648 [34 P. 513]; *In re Stevens*, 83 Cal. 322, 329 [23 P. 379].) When this intent does not appear the "presumption of law that the failure to name a child or grandchild in a will was unintentional" rules the case. (54 Cal.2d at p. 249.)

As to the no contest portion of the 13th clause, we held that, as a matter of law, it could not be construed as demonstrating an intention to disinherit a child. Not only did the no contest provision fail to show the requisite intention in strong and convincing language, but also it could not be construed to include a pretermitted heir who asserts a claim to take despite the will and does not contest the will. (54 Cal.2d at p. 251; *Estate of Sankey*, 199 Cal. 391, 403 et seq. [249 P. 517]; *Estate of Loyd*, 175 Cal. 699, 703-704 [167 P. 157]; see Cal. Will Drafting (Cont. Ed.Bar 1965) § 7.31.)

We also held in *Torregano* that extrinsic evidence is admissible in a case of pretermission to establish a *lack of intent* to omit to provide for an heir as a matter of fact. (54 Cal.2d at pp. 246-248.) Pretermission can only arise from mistake or oversight. (*Payne v. Payne*, 18 Cal. 291, 302.) It is quite obvious that "[i]t could not well appear from the will itself that a mistake had been committed, nor that accident had caused the testator to omit his children." (*Matter of Estate of Garraud*, 35 Cal. 336, 342.) Extrinsic evidence must be admissible to establish the mistake or oversight that caused omission of a child from a will. Otherwise the rights of children established by section 90 would be defeated.

But our holding that extrinsic evidence could be used to interpret general language in the will for the purpose of finding a *lack of intent* to omit to provide for an heir did not change the rule, established in the specific language of section 90 and in the case law (*Estate of Trickett, supra*, 197 Cal. 20, 22; *In re Stevens, supra*, 83 Cal. 322, 328-329; *Matter of Estate of Garraud, supra*, 35 Cal. 336, 342), that extrinsic evidence is inadmissible to prove an intent to disinherit a natural heir. (54 Cal.2d at pp. 246, 248.)

In *Estate of Falcone*, 211 Cal.App.2d 40 [27 Cal.Rptr. 38], it was held that, although there was extrinsic evidence which would clearly establish that the testator intended to disinherit her children in her will, there could be no disinheritance in that case since the intent was not on

the face of the will. "It is true that the effect of this extraneous writing indicates quite clearly that she had her children in mind when she wrote the will and therefore that her not naming them was intentional. However, under the existing statutory law the trial court was correct in not resorting to the extraneous writing from which to arrive at this conclusion since such intention did not appear from the will itself as required under Probate Code section 90 previously alluded to." (211 Cal.App.2d at pp. 47-48.)

Of course, in some situations the proponents of a will are entitled to introduce extrinsic evidence to rebut the extrinsic evidence presented by the presumptive heir. However, the extrinsic evidence of the proponents must be strictly limited to its rebuttal function and may not be used as affirmative evidence against the presumptive heir to establish that the omission of the heir was intentional. (*Estate of Bank,* 248 Cal.App.2d 429, 436-437 [56 Cal.Rptr. 559].) A contrary rule would violate the specific language in section 90 that an intention to omit must appear in the will. Similarly, extrinsic evidence presented by the presumptive heir may sometimes be subject to conflicting inferences. Such evidence may be used to prove an intent not to omit to provide for an heir, but it would be contrary to section 90 to permit such evidence to establish that the omission was intentional. In other words, the trier of fact may draw the inference in favor of the presumptive heir or may refuse to draw that inference, but he may not draw the contrary inference to establish an intentional omission.

The trial court in the instant case failed to follow the dictates of our *Torregano* decision. Although the clause in the instant case is phrased in terms of "challenge" to the will rather than "contest," it is clear that the meaning of the provision is the same. Pretermitted heirs do not contest or challenge a will but take in spite of it. Accordingly, as a matter of law, the clause may not be found to establish an intent to disinherit a daughter. The statement in the will indicating that Dale had no children does not show an intent to disinherit, and, as we have seen, such an intent may not be established by extrinsic evidence. We conclude that there is no competent evidence to support the trial court's determination that Dale intentionally omitted to provide for his daughter in his will.

■ We turn now to Dulcie May's claims. In *Vargas* v. *Superior Court,* 9 Cal.App.3d 470, 473-474 [88 Cal.Rptr. 281], the Court of Appeal stated: "The following well established rules of law are not questioned: When a person has entered into two successive marriages, a presumption arises in favor of the validity of the second marriage (see Evid. Code, § 663), and the burden is upon the party attacking the validity of the

second marriage to prove that the first marriage had not been dissolved by the death of a spouse or by divorce or had not been annulled at the time of the second marriage. (Evid. Code, §§ 604, 605; *Estate of Smith* (1949) 33 Cal.2d 279, 281 [201 P.2d 539]; *Estate of Hughson* (1916) 173 Cal. 448, 451 [160 P. 548]; *Hamburgh* v. *Hys* (1937) 22 Cal.App.2d 508, 509 [71 P.2d 301]; *Hunter* v. *Hunter* (1896) 111 Cal. 261 [43 P. 756].)"

Dulcie May contends that the presumption in favor of the validity of a subsequent marriage should only be raised where there is a contest between two spouses or between one spouse and the representatives of another spouse. The basis for this contention is that the policy behind the presumption assertedly is the protection of spouses' interests in community property and that where strangers to a marriage and to community property interests raise the presumption as in the instant case, there is no reason for its application.

While one of the bases of the presumption is the protection of community property interests, the primary basis of the presumption is the policy of this state that no one shall be presumed to have done wrong or presumed to be a bigamist. (Cf. Evid. Code, § 520.) It would be anomalous and contrary to common experience to presume that persons married more than once are bigamists. These considerations apply whether or not the last spouse is before the court and are decisive in the instant case.

■ Dulcie May's attorney asked for a continuance at the conclusion of the hearing in order to bring Dulcie May before the court to rebut the presumption that had been raised by the marriage to Victoria Jo. It is urged that the trial court erred in denying the continuance.

■ A trial court has great discretion in the disposition of an application for a continuance. Absent a clear abuse of discretion, the court's determination will not be disturbed. (*Kalmus* v. *Kalmus,* 103 Cal.App.2d 405, 413 [230 P.2d 57].) There was no abuse of discretion here.

■ Dulcie May had full knowledge that the issue of the termination of her marriage would be raised at the hearing. The replies to her petition for a determination of interest all mention the subsequent marriage to Victoria Jo and all question the continuing validity of her marriage to Dale. The will itself refers to the marriage to Victoria Jo and gives notice to Dulcie May that the continuation of her marriage would be questioned. No showing has been made which would require a continuance.

Insofar as the order appealed from denies the claim of Dulcie May, it is affirmed; the order is reversed in all other respects. Deidre shall recover an amount equal to one-half of the appellants' costs on appeal from respondents. Respondents may recover one-half of their costs on appeal from Dulcie May. Dulcie May shall bear her own costs on appeal.

The petition of respondent Atkinson for a rehearing was denied April 25, 1973.