641 P.2d 539

In the Matter of the ESTATE OF Joseph J. PADILLA, Deceased.

**Richard L. SANCHEZ, Plaintiff-Appellant,**

v.

**Ramona QUINTANA and Mary Padilla, Defendants-Appellees.**

No. 5053.

Court of Appeals of New Mexico.

Feb. 9, 1982.

Stewart Rose, Rose, Paskind, Lynch & Dow, P. A., Albuquerque, for plaintiff-appellant.

Federico R. Ballejos, Gerard W. Thomson, Adams & Foley, P. C., Albuquerque, for defendants-appellees.

## OPINION

SUTIN, Judge.

Joseph J. Padilla, unmarried, died on August 15, 1978. He left a Will allegedly executed on July 27, 1968. A petition for formal probate of the Will was filed. An Order was entered that admitted the Will to probate and appointed a personal representative. Mary Padilla and Ramona Quintana, sisters of decedent, filed a motion to set aside the Order, which motion was granted. Objections to the probate of the Will were filed. Thereafter, Mary Padilla filed a petition for adjudication of intestacy because decedent left a Will that was not validly executed and attested to. Richard L. Sanchez filed a demand for notice pursuant to § 45-3-204, N.M.S.A.1978, in which he stated his interest to be that of a son and heir-at-law not provided for in the Will.

On January 25, 1979, a hearing was held to determine the validity of the execution and attestation of the Will. At the conclusion of the hearing, the Court orally ruled that the Will was valid relying on the presumption of due execution as set forth *In re Akin's Estate*, 41 N.M. 566, 72 P.2d 21 (1937).

Subsequently, an Amended Petition of Probate of the Will was filed. On September 8, 1980, a hearing was held on the status of Richard L. Sanchez as a son and heir of decedent, as well as on the validity of the Will. Based upon both hearings, the trial court made the following pertinent findings and conclusions:

1. Decedent signed his Last Will and Testament, entitled "Will" dated July 27, 1968 of his own free will, and such was witnessed by Mr. J. J. Lueras and Mrs. E. R. Cisneros [sic—Mr. E. R. Sisneros].

2. Mr. Padilla's will recited that he had no children whom he had omitted to name or provide for in the Will.

\*  \*  \*  \*  \*  \*

5. Joseph J. Padilla intentionally omitted any child or children that he might have had from taking under his Will.

\*  \*  \*  \*  \*  \*

9. That the names . . . of the heirs of the decedent are: Mary Padilla \* \* \* Ramona Quintana \* \* \* \*

10. That the decedent, by instrument dated July 27, 1968, attempted to dispose of his estate by a "Will" wherein the witnesses were Mr. J. J. Lueras and Mr. E. R. Cisneros [sic—E. R. Sisneros].

The trial court adopted the following conclusions of law:

1. The Will of Joseph J. Padilla, dated July 27, 1968 was executed in accordance with the laws of the State of New Mexico, and is therefore valid.

2. Joseph J. Padilla intentionally omitted any child or children from sharing in any distribution of his estate.

3. The distribution of Joseph J. Padilla's estate is to be as set out in his Last Will and Testament of July 27, 1968.

4. Although Richard L. Sanchez is the natural son of Joseph J. Padilla, decedent, he was intentionally omitted from the decedent's Last Will and Testament, therefore, he is not entitled to any distribution of the estate of Joseph J. Padilla.

A final Order was entered that formally probated the Will and that Richard L. Sanchez was not entitled to any distribution. Sanchez appeals. We reverse.

Sanchez raises two points in this appeal:

1. Decedent's alleged Will was not executed pursuant to § 45–2–502, N.M.S.A. 1978, and therefore invalid and decedent should be found to have died intestate.

2. Sanchez is pretermitted by decedent's Will and is entitled to decedent's entire estate.

### A. *Decedent's Will was valid.*

■ The statute in effect at the time decedent executed his Will was § 30–1–6, N.M.S.A.1953 Comp. It reads:

The witnesses to a written will must be present, see the testator sign the will * * and must sign as witnesses at his request in his presence and in the presence of each other.

The attestation clause reads:

In TESTIMONY WHEREOF, I have on this 27 day of July, 1968 signed, sealed, published and declared this to be my last will and testament, in the presence of Mr. J. J. Lueras and Mr. E. R. Sisneros who have at my request, in my presence and in the presence of each other, hereunto subscribed their names as witnesses hereto.

s/Joe J. Padilla (Seal)

Witnesses:

s/J. J. Lueras * * * [address shown]

s/E. R. Sisneros * * * [address shown]

Lueras and Sisneros testified that on different occasions decedent had requested them to drop by his home and sign his Will. Neither was present when the other witness signed the Will. Neither witness recalled seeing decedent sign the Will. When Sisneros signed the Will, he saw Lueras' signature on it, and recognized the signature of decedent.

This testimony did not satisfy the requirements of the statute. The Will would be invalid if it were not saved by a presumption of due execution.

*Akin's Estate*, supra, involved the contest of a Will with a non-attestation clause. The Will was signed by the testatrix and two witnesses. The surviving witness testified as to the statutory requirements, but he had no distinct recollection of the transaction or its details. He had only a faint recollection of the matter. The court held that the rule applicable to a Will with a complete attestation clause applied to a Will without an attestation clause. The rule was stated as follows:

It has been held innumerable times by the courts of this country and England that a complete attestation clause above the signature of witnesses to a will raises a presumption of the due execution of the will, *if the signatures of the testator and witnesses are proved to be genuine. German Evangelical Bethel Church of Concordia v. Reith*, 327 Mo. 1098, 39 S.W.(2d) 1057, 76 A.L.R. 604, and annotations at page 617 * * * * [Emphasis added.] [Id. 570 [72 P.2d 21].]

In *German Evangelical*, the two surviving witnesses testified that they did not sign in the presence of the testatrix. This was the only direct testimony on the point. A mandatory statute required witnesses to sign in the presence of the testator. The respondents who were the beneficiaries under the Will insisted that they made a case for the jury by proving the genuineness of the signatures of the testatrix and attesting witnesses. They further contended that the signatures of the attesting witnesses raised a presumption of due execution which alone was sufficient to make a prima facie case even against the unfavorable or negative testimony of the witnesses. The court held that the law does not leave a Will at the mercy of the subscribing witnesses even if any or all of them appear and testify adversely. We quote the following excerpts from the opinion:

Some cases hold the presumption of due execution arising from an attesting clause or subscription obtains only in the absence of evidence to the contrary, or that it is rebutted when the attesting witnesses appear and give conflicting testimony, particularly if it is convincing. [Citations omitted.]

If these decisions have reference to the comparative *weight* of the evidence, and apparently some of them do, we have no quarrel with them, though each case must

stand on its own facts. *But if they mean to say adverse testimony from the subscribing witnesses produced by the proponents under compulsion of law destroys what would otherwise be a prima facie case for the will, we cannot agree.*

\* \* \* \* \* \*

*Without prolonging this discussion, we hold the respondent-proponents made a prima facie case, and that the trial court did not err in submitting it to the jury.* [Emphasis added in part by the court.] [39 S.W.2d 1063–64.]

*German Evangelical* held that a presumption of due execution is sufficient to create a prima facie case for the proponents of the Will. This rule is no longer effective in New Mexico.

We are now guided by Rule 301 of the Rules of Evidence. It reads:

In all cases not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence.

In the instant case, the "presumed fact" is that, with three genuine signatures, the Will is valid. This presumption was directed against Richard Sanchez and Mary Padilla, each of whom claimed the Will was invalid. To overcome this "presumed fact," Sanchez and Padilla must prove the Will was invalid. "The disappearance of the presumption upon the presentation of contrary evidence was eliminated, however, when the 1973 Rules of Evidence were adopted." Under Rule 301, "the inference may continue to operate in an evidentiary sense even after introduction of evidence tending to establish the contrary, *and may sufficiently influence the trier of facts to conclude that the presumed fact does exist.*" [Emphasis added.] *State Farm Mut. Auto. Ins. Co. v. Duran*, 93 N.M. 489, 492, 601 P.2d 722 (Ct.App.1979); *Trujillo v. Chavez*, 93 N.M. 626, 603 P.2d 736 (Ct.App. 1979).

In the instant case, the trier of fact did conclude that the presumed fact did exist.

Sanchez and Padilla failed to prove as a matter of law that it was more probable that the Will was invalid.

The signatures of decedent and the two witnesses were proved to be genuine. A presumption of fact of due execution of the Will arose. An issue of fact of due execution of the Will was submitted to the district court. It resolved the issue in favor of the validity of the Will. No rational basis exists for reversing the trial court on the validity of the Will.

B. *Sanchez is entitled to share in the Estate.*

Richard L. Sanchez is an illegitimate child.

Prior to decedent's death in 1978, the meaning of "child" was set forth in § 45–2–109(B)(3), N.M.S.A.1978, as follows:

[A] person born out of wedlock is a child of the mother. That person is also a child of the father, if:

\* \* \* \* \* \*

(3) the paternity is established by an adjudication before the death of the father *or is established thereafter by a preponderance of the evidence.* [Emphasis added.]

This statute was in effect at the time of decedent's death. *Matter of Estate of Seymour*, 93 N.M. 328, 600 P.2d 274 (1979).

The trial court found that "Richard L. Sanchez is the natural son of Joseph J. Padilla." This finding was established by a preponderance of the evidence.

Ernestine Sanchez and decedent were sweethearts and next door neighbors. They were often together. She was 19 or 20 years old. Decedent was about 24 or 25 years old. Ernestine became pregnant and told her mother that decedent was the father of her baby. Ernestine's father and mother went next door to visit decedent's parents, told them that Ernestine was pregnant and that decedent was the father. Decedent's father thought that the children should get married. Decedent's mother

screamed and was hysterical. She said she would kill herself before she would let her son marry Ernestine. When decedent was confronted with this matter by his parents, he did not then or ever deny that he had sexual intercourse with Ernestine.

On one occasion, when walking with Ernestine, decedent said, "Don't worry. We will work it out." He kissed her. She said, "No, no, don't worry about it but don't tell anyone that." Ernestine said she and decedent were thinking about marriage and were going to get married. After the visitation of the parents, this idea vanished. Decedent told Ernestine that he loved her but circumstances prevented the marriage. Decedent wanted to continue with his education. The community knew that decedent was the father of Richard and inquired about it. Decedent addressed Ernestine's younger brother as "cunadito" [little brother-in-law].

Richard L. Sanchez was born in 1942. Eleven months later, Richard joined the Sanchez family in moving to San Diego, California where his grandfather obtained employment. Richard was raised by his grandparents. One of Richard's uncles lived in Albuquerque and worked for the Albuquerque Journal. When Richard reached his teens, he would visit his uncle during the summer.

In 1959, Richard was 17 years old. His uncle was 24 years old. During a summer visit in Albuquerque, decedent called Richard and asked him to have dinner that night. Richard, being nervous, asked his uncle if he would go with him and receiving an affirmative response, Richard accepted the invitation. During the dinner, decedent said, "I am your father"; remarked what a good looking boy Richard was; that he was proud to be Richard's father. There was some talk about financial help if Richard needed it to get through school.

In 1964, Richard married. While in the army and travelling, he became deathly ill and was taken to Sandia Base hospital. Ernestine came to Albuquerque and decedent took her to the hospital. They only stood outside his door. Richard told his wife that decedent was his father and related his teenage experience in the restaurant. Richard recovered.

In 1969, or early 1970, decedent gave Ernestine a ruby ring, her birthstone. After Ernestine passed away, Richard called decedent, addressed him as "father," to give him the sad news. This was his last communication with decedent.

During visits to Albuquerque, decedent would visit with Ernestine and they remained good friends. Decedent never married, was well educated, became a principal of a high school and a prominent person. Decedent died in 1978.

Despite testimony of silence of decedent with reference to Richard and lack of communication between decedent and Richard over a period of 36 years, the trial court found "That Joseph J. Padilla is the natural father of Richard L. Sanchez." The trial court heard and evaluated the testimony of the witnesses. We will not disturb the finding of the court.

Section 45–2–302(A)(1) provides:

If a testator fails to name or provide in his will for any of his children born * * * before * * * the execution of his will, the omitted child * * * receives a share in the estate equal in value to that which he would have received if the testator had died intestate unless:

1. *it appears from the will* that the omission was intentional. [Emphasis added.]

Decedent's will was on a printed form. The last sentence prior to the attestation clause reads:

I declare that I have no children whom I have omitted to name or provide for herein * * * *

The trial court found that under this provision decedent "intentionally omitted any child or children that he might have had from taking under his Will."

"It appears from the will," means that we are bound by the contents of the Will. Extrinsic evidence of decedent's intention falls on the wayside.

It has long been recognized that in construing Wills, the intent and meaning of a testator must be ascertained from the instrument itself. It must be gathered from a consideration of all language contained in the four corners of the Will, his scheme of distribution, circumstances surrounding him at the time he made the Will and existing facts. In determining testator's intention, the purpose of the inquiry is to ascertain not what he meant to express, apart from the language used, but what the words used do express; not to add words to those in the Will to contradict its language, or to take words away from those used in the Will, even though the court may believe that the actual disposition of decedent's property which results through changing circumstances, was not contemplated by him. *Gregg v. Gardner,* 73 N.M. 347, 388 P.2d 68 (1963); *Delaney v. First National Bank in Albuquerque,* 73 N.M. 192, 386 P.2d 711 (1963); *Lamphear v. Alch,* 58 N.M. 796, 277 P.2d 299 (1954). *Lamphear* says:

> We are not unfamiliar with the doctrine that where ambiguity does exist, resort may be had to aids in construction in arriving at the true intent of the testator, such as the presumption against intestacy, absence of a residuary clause, and the like. [58 N.M. 801.]

A declaration by testator that "I have no children whom I have omitted to name or provide for herein" is not an intentional omission. *In re Estate of Peterson,* 74 Wash.2d 91, 442 P.2d 980 (1968); *In re Estate of Smith,* 9 Cal.3d 74, 106 Cal.Rptr. 774, 507 P.2d 78 (1973).

In *Peterson,* the court said:

> The statement in the will of the case before us—"I have no children, no children of deceased children, and no adopted children"—is not sufficient naming of a child * * * to satisfy RCW 11.12.090 ["not named or provided for in such will"]. It is not a designation; it is a denial, and the mistaken denial that he has children seems to us a clear example of a situation in which the statute was intended to operate to protect a forgotten child from being disinherited. There is

no indication in the will that the testator remembered the petitioner and intended to disinherit him. [Id. [442 P.2d] 983.]

In *Smith,* the court said:

> The statement in the will indicating that Dale had no children does not show an intent to disinherit and, as we have seen, such an intent may not be established by extrinsic evidence. We conclude that there is no competent evidence to support the trial court's determination that Dale intentionally omitted to provide for his daughter in his will. [Id. [507 P.2d] 82.]

To disinherit Sanchez, an affirmative, not negative, indication of intention must appear on the face of the Will. *Crump's Estate v. Freeman,* 614 P.2d 1096, 1099 (Okl.1980) said:

> Before "natural rights and expectations" of one's issue to share in the ancestor's wealth may be legally extinguished, the intent to disinherit must appear upon the face of the will in strong and convincing language.

"Strong and convincing language" means "I specifically disinherit." *Estate of Leonetti,* 115 Cal.App.3d 378, 171 Cal.Rptr. 303 (1981). "I declare that I have intentionally omitted to provide for * * * *" *Estate of Hirschi,* 113 Cal.App.3d 681, 170 Cal.Rptr. 186 (1980); *Estate of Szekely,* 104 Cal. App.3d 236, 163 Cal.Rptr. 506 (1980). "I fully understand who my heirs at law would be upon my death * * * * I expressly provide * * * *" *Bridgeford v. Estate of Chamberlin,* 573 P.2d 694 (Okl.1977). These declarations overcome a statement by testator that he had never been the father of any child or that he had no children. *Szekely,* supra. *Leonetti,* omitting citations, said:

> The pretermission statute guards against the unintentional omission of lineal descendants from a share in a decedent's estate by reason of "oversight, accident, mistake or unexpected change of condition." Although a testator may lawfully disinherit his issue, in order to avoid the operation of the pretermission statute his intent to do so "must appear on the face of the will, and it must then appear from

words which indicate such intent directly, or by implication equally as strong." *To overcome the pretermission statute it must thus appear on the face of the will that at the time of its execution the testator had in mind the descendant in question and intentionally omitted to provide for him.* [Emphasis added.] [171 Cal. Rptr. 305–6.]

Where a Will recited that testator had no children, evidence of testator's oral references to existence of a daughter at or near the time the Will was executed was not admissible to show an intent to disinherit his daughter. *Smith*, supra. See also, *Estate of Glomset*, 547 P.2d 951 (Okl.1976) and *In re Estate of Cooke*, 96 Idaho 48, 524 P.2d 176 (1973) where the failure to mention a child in a will and in which $1.00 is given to a person who makes a claim, do not show an intention to omit children within the meaning of the pretermission statute.

A conflict of authority exists on *"Admissibility of extrinsic evidence to show testator's intention as to omission of provision for child."* 88 A.L.R.2d 616 (1963). Even though we considered the transcript of proceedings, nothing appears in the will that would meet the *Leonetti* test.

Mary Padilla and Ramona Quintana, sisters of decedent, who seeks to defeat Sanchez' claim, cite *In re McMillen*, 12 N.M. 31, 71 P. 1083 (1903); *Smith v. Steen*, 20 N.M. 436, 150 P. 927 (1915); *Mares v. Martinez*, 54 N.M. 1, 212 P.2d 772 (1949); *Matter of Will of Padilla*, 91 N.M. 160, 571 P.2d 817 (1977).

*McMillen* held, absent any statutory provisions, that in territorial days the testator could disinherit a minor son in a Will in which the son is not mentioned or referred to. The court said:

Under the common law a child could be disinherited without being mentioned in a will, unless it appeared that the omission of his name occurred through inadvertence or mistake. [Id. 35 [71 P. 1083].]

*Smith* involved a statute under which the ancestor dies intestate as regards a child not named or provided for in the Will. The court said:

The courts, in construing this statute, have held that the object of the statute is to produce an intestacy only when the child or descendant is unknown or forgotten, and thus unintentionally omitted; that the statute extends only to a case of an entire omission, and the mention of a child without a legacy or other provision for him is sufficient to cut him off from a distributive share of the estate. [Id. 445 [150 P. 927].]

*Mares* involved the same statute applied in *Smith*. Plaintiff was not a pretermitted child because she was named and provided for in the Will.

*Padilla* involved the same statute applied in *Smith* and *Mares*. The testator intentionally omitted his children. The Will said "I leave them nothing in this Will." This statute was copied from the statute in force in Missouri in 1901. It was designed to change the common law rule and to provide that the omission of a child would be presumed to be unintentional. The court said:

However, when the testator's intent is not contested and is established so clearly as to remove any doubt, we will recognize an exception. [Id. 162 [571 P.2d 817].]

These cases are reviewed to show that under the common law and the *previous* pretermitted statute, nothing can be found that supports Mary Padilla's position under the present statute. Neither does Mary Padilla cite any authority to support arguments made.

REVERSED. This case is remanded to the district court to vacate and set aside its Order that formally probated the Will of Joseph J. Padilla, deceased; that a judgment be entered that Richard L. Sanchez is the natural son of Joseph L. Padilla, deceased, and is the sole and only heir of Joseph L. Padilla, deceased, and takes the estate of Joseph L. Padilla by way of intestacy; that Lina Brazfield, Personal Representative of the Estate of Joseph J. Padilla, deceased, prepare and file a final report and accounting, and said estate be closed in accordance with the appropriate provisions of the Probate Code. Appeal costs to be

paid by Mary Padilla and Ramona Quintana.

IT IS SO ORDERED.

WALTERS, C. J., concurs.

HENDLEY, J., concurring in result only.