1998-NMCA-145

966 P.2d 183

**In the Matter of the ESTATE OF Maria D. FRIETZE and Lorenzo S. Frietze, Deceased.**

**Robert GARCIA, Naciaseno Garcia, and Angelita Garcia, Petitioners–Appellants,**

**v.**

**J. Paul TAYLOR, Personal Representative, Respondent–Appellee.**

No. 18,534.

Court of Appeals of New Mexico.

Aug. 20, 1998.

Beverly J. Singleman, Hubert & Hernandez, P.A., Las Cruces, for appellants.

Joseph Cervantes, Cervantes Law Firm, Las Cruces, for appellee.

*OPINION*

ALARID, Judge.

{1}   This appeal arises from a dispute between the parties over whether certain provisions of Lorenzo S. Frietze's (Testator) will are ambiguous and the trial court's disposition of certain realty in Testator's estate. The parties asked that the trial court determine the identity of the beneficiaries of properties labeled in the will as numbers 1, 6, and 8. On appeal, Appellants (the Garcias) contend that the trial court erred in: (1) accepting extrinsic evidence regarding the testamentary intent of the Testator with respect to property number 6 and subsequently granting property number 6 to the Personal Representative/Appellee, J. Paul Taylor (Taylor); (2) denying their motion for a new trial; and (3) awarding attorney fees and costs to Taylor. We reverse in part and affirm in part.

**FACTS AND PROCEDURAL HISTORY**

{2}   On December 15, 1988, Maria D. Frietze and Lorenzo S. Frietze, husband and wife, executed wills with the assistance of their attorney. In preparing for the execution of Lorenzo S. Frietze's (Testator) will, the attorney sorted through numerous documents including multiple deeds and legal descriptions of property owned by the Testator. The attorney, with Testator, physically inspected the property to be devised by Testator to the Garcias and Taylor, and discussed Testator's planned disposition of these properties. Based on the intentions of Testator and his wife, the attorney drafted their wills.

{3}   After the will was executed, Testator requested that Taylor accompany him and drive the boundaries of the property that Testator wanted to devise to Taylor. At this time, Testator informed Taylor of his intent to give him property and for him to serve as Testator's personal representative.

{4}   On February 13, 1994, Maria Frietze died and on May 19, 1994, Testator died. Testator's will devised several pieces of property to the Garcias and one property to Taylor whom Testator also named the personal representative of the estate. Testa-

tor's will devised to Taylor the "remainder interest in the real property located in Old Mesilla, New Mexico, described in Exhibit A as Property # 1[.]" He also devised to the Garcias "[t]he real property described in Exhibit A as Properties # 2—8[.]"

Exhibit A describes property number 1 as:

Remainder interest in a tract of land situated in Square No. 35 of the Town of Mesilla and containing thirty-six (36) varas in width from N.W. to S.E. and fifty (50) varas in depth from N.E. to S.W., being the identical real estate described in Special Master's Deed dated January 31, 1969, recorded in Deed Book 202, p. 145 of the records of Dona Ana County, N.M., which is subject to a life estate in favor of Lucia Frietze.

Exhibit A describes property number 8 as:

A 0.3277 acre tract situated within the town limits of Mesilla, Dona Ana County, N.M. in the S ½ of Section 25, T. 23S., R. 1E, N.M.P.M., U.S.R.S. Surveys and is all of U.S.R.S. Tract 11–A 49A and is a portion of U.S.R.S. Tract 11–A 49B[.]

Exhibit A describes property number 6 as:

A 0.1132 acre tract of land situated within the Town of Mesilla, Dona Ana County, N.M. in Section 25, T. 23S; R. 1E, N.M.P.M. [sic] of the U.S.R.S. Surveys[.]

{5} Upon the death of Testator, Taylor, as the personal representative, requested the assistance of an attorney, Manuel Lopez. Mr. Lopez became aware that properties numbered 1 and 8 in Exhibit A were in fact the same piece of property devised to both the Garcias and Taylor. Mr. Lopez informed the Garcias and Taylor of the inconsistency in the will.

{6} To attempt to clarify the intent of Testator, the Garcias and Taylor spoke with the attorney who drafted Testator's will. She informed the parties that it was Testator's intention that property number 1 be devised to Taylor, not the Garcias. After receiving this information, on July 15, 1996, the Garcias commenced a formal proceeding in probate requesting that Taylor be removed as the personal representative of the estate and Taylor filed a counter-petition to have the court construe Testator's will.

{7} During the trial, the trial court heard the testimony of a surveyor and the attorney who drafted Testator's will. The surveyor testified that although properties numbered 1 and 8 were conveyed to different devisees, they were in fact the same parcel of property described with two different types of legal description. The surveyor also testified that property number 6 was a separate piece of property although the two pieces of property share a common wall. After the surveyor testified, the trial court admitted the testimony of the attorney who drafted Testator's will as extrinsic evidence. The attorney testified that it was the intent of Testator to devise properties number 1 and number 6 to Taylor and she testified that the two different types of legal description created the confusion in Exhibit A.

{8} The trial court found that the will was ambiguous and, based on this finding, admitted extrinsic evidence concerning Testator's testamentary intent relating to the disposition of properties 1, 6, and 8 described in Exhibit A of the will. Based on the extrinsic evidence presented, the trial court determined that it was the intent of Testator to devise both property 1 and property 6 to Taylor and entered judgment awarding the properties to Taylor. Additionally, the trial court held that Taylor had acted in good faith within his capacity as personal representative in pursuing and defending the estate in this action and therefore ordered that Taylor be reimbursed for reasonable costs and attorney fees.

## DISCUSSION

### Extrinsic Evidence and Ambiguity

{9} The Garcias argue that the trial court erred in allowing extrinsic evidence to be presented concerning property number 6. They do not appeal the award of property number 1 to Taylor. They assert that there is no ambiguity in the will regarding property number 6 and therefore the admission of extrinsic evidence was unjustified.

{10} If a will is unambiguous, extrinsic evidence may not be accepted to determine the intent of the testator. Whether a will is ambiguous is a question of law. *See Portales Nat'l Bank v. Bellin*, 98 N.M. 113,

117, 645 P.2d 986, 990 (Ct.App.1982). We review the trial court's application of the law de novo to determine whether the law was correctly applied to the facts. *See Gallegos v.. New Mexico Bd. of Educ.*, 1997–NMCA–040, ¶ 11, 123 N.M. 362, 940 P.2d 468. To determine whether Testator's will is ambiguous, the trial court may look to extrinsic evidence, but it should not be used to vary the terms of the will. *See Mark V, Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993). If the intent cannot be gleaned from the will or extrinsic evidence it is ambiguous. *See id.; In re Estate of Padilla*, 97 N.M. 508, 513, 641 P.2d 539, 544 (Ct.App. 1982).

{11} To determine whether Testator's will was ambiguous on its face, the trial court had to determine which legal description identified each property and which devisee was to receive each property. Once the property in the will was characterized by the same form of legal description, the ambiguity in the will as to properties numbered 1 and 8 became obvious. Property number 1 and property number 8 are the same piece of property devised to two different devisees, Taylor and the Garcias. Having found that there was an ambiguity on the face of the will, the trial court was correct in turning to extrinsic evidence to determine the intent of the testator as to the properties numbered 1 and 8. *Portales Nat'l Bank*, 98 N.M. at 117, 645 P.2d at 990; *cf. In re Estate of Padilla*, 97 N.M. at 512, 641 P.2d at 543. The Garcias do not challenge this decision.

{12} The will states that property number 6 is devised to the Garcias only. The trial court admitted extrinsic evidence from a surveyor, who had examined the will and deeds, and the attorney who drafted Testator's will. The surveyor testified that although the description of property number 6 was generic, incomplete, and imprecise, it was clearly separate from property number 1. He testified that properties numbered 1 and 6 share a common wall but are separate pieces of property with separate legal descriptions, and were acquired by Testator at different times. The attorney testified that, despite the wording of the will, Testator intended to devise property number 6 to Tay-lor. Because the terms of the will clearly indicate that property number 6 was intended to be devised to the Garcias, it was error to allow the introduction of extrinsic evidence from the attorney who drafted the will to show an intent of Testator not expressed therein.

{13} This decision is supported by case law from other jurisdictions. The case of *Appleton v. Rea*, 389 Ill. 222, 58 N.E.2d 854 (Ill.1945), is very much on point. In that case, the devise to one beneficiary was clear and unambiguous. It provided that the person was to receive two houses on lot 2. The devise to another beneficiary was ambiguous. It provided that he was to receive the brick house on lot 1. The problem was that the brick house was on lot 2 and the house on lot 1 was made of concrete and sheet iron. The appellate court held that any ambiguity regarding lot 1 did not permit the trial court to take evidence regarding the unambiguous devise of lot 2. The court said, "The rule [regarding extrinsic circumstances of the testator's intent] has never been so applied to wills that explaining the ambiguity in one clause operates to reform or vary the devise to another person, in another part of the will, which contains no ambiguity." *Id.* at 857. The court emphasized that

> the will cannot be reformed to conform to any intent of the testator not expressed in it, no matter how clearly a different intent may be proved by extrinsic evidence. The reason is that, if the rule were otherwise, all wills would be subject to proof of mistake and of a different intention from that expressed, so that, in fact, property would pass without a will in writing, which the law demands.

*Id.* We, therefore, reverse the judgment of the trial court granting property number 6 to Taylor.

### Appearance of Impropriety

{14} The Garcias argue that the trial court was biased and partial in favor of Taylor because he was a politician in New Mexico, and allege that after the trial, the trial judge approached Taylor, asked about the well being of Taylor's relatives, and asked for V.I.P. tickets to hear President Clinton speak

at a political rally to be held in Las Cruces that evening. It is on the basis of these allegations that the Garcias made a motion for a new trial. The motion was denied by operation of law after thirty days. However, in light of our disposition of the other issues in this case, we need not determine whether the trial court erred by allowing the motion to be denied by operation of law.

### Legal Fees

{15} The Garcias contend that the trial court also erred in awarding costs and attorney fees to Taylor. In doing so, they argue that the only means for awarding attorney fees is when the personal representative enters litigation to confer a benefit upon the estate. The requirement of conferring a benefit upon the estate however arose under the cases interpreting the superseded NMSA 1978, § 45–3–720 (1976). Section 45–3–720 (repealed in 1995) provided in pertinent part: "Attorneys for personal representatives of decedents' estates shall be allowed out of such estates, as fees for representing such personal representatives in the conducting of ordinary probate proceedings, the same amounts as are fixed by Section 45–3–719 NMSA 1978[.]" This Court interpreted this statute as requiring, as a prerequisite to an award of attorney fees, a conferral of a benefit upon the estate. *See Lucero v. Lucero*, 118 N.M. 636, 642, 884 P.2d 527, 533 (Ct.App. 1994). This Court also construed it to prevent litigation to benefit one person and to prevent prolonged litigation. *See id.*

{16} The current version of Section 45–3–720 (1995) drastically changed the language of the statute. Section 45–3–720 provides that "[i]f any personal representative or person nominated as a personal representative defends or prosecutes any proceeding in good faith, whether successful or not, he is entitled to receive from the estate his necessary expenses and disbursements including reasonable attorneys' fees incurred."

{17} Our primary task in determining the meaning of a statute is to give effect to the intention of the legislature. *See Archer v. Roadrunner Trucking, Inc.*, 1997– NMSC–003, ¶ 7, 122 N.M. 703, 930 P.2d 1155 (1996). When interpreting a statute, if the words used are unambiguous, we will not construe the statute to mean anything other than what it plainly says. *See Williams v. Ashbaugh*, 120 N.M. 731, 733, 906 P.2d 263, 265 (Ct.App.1986). If the meaning of the statute is clear, we must refrain from further statutory construction. *See Sims v. Sims*, 1996–NMSC–078, ¶ 17, 122 N.M. 618, 930 P.2d 153. Finding that the language of Section 45–3–720 is unambiguous, we hold that the statute now only requires an action by the personal representative to be in good faith in order to receive attorney fees. The statute does not require that the suit benefit the estate and in fact allows for an award of attorney fees even if the personal representative is not successful in the litigation. Section 45–3–720.

{18} The trial court in its findings of fact and conclusions of law found that Taylor, as the personal representative, acted in good faith in prosecuting this proceeding. Even if Taylor had not been a beneficiary under Testator's will, resolution of the conflict between the legal descriptions of property numbers 1 and 8 and identifying the beneficiary of that property would have been necessary. The probate of Testator's estate could not be concluded until these discrepancies were resolved. Therefore, Taylor pursued these claims in good faith and even if interpreted under the superseded version of Section 45–3–720 would have been of benefit to the estate. We, therefore, affirm the trial court's finding that Taylor fulfilled his duties as personal representative in good faith and affirm the award of reasonable attorney fees incurred in this litigation.

### CONCLUSION

{19} Based on the foregoing discussion, we reverse the judgment of the trial court granting property number 6 to Taylor and affirm the trial court in all other respects. The parties shall bear their own costs and attorney fees on appeal

{20} **IT IS SO ORDERED.**

DONNELLY and PICKARD, JJ., concur.