Filed 9/5/25  Stafford v. Molano CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CORNELIUS STAFFORD,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NICOLE MARIE MOLANO,<br><br>Defendant and Appellant. | B342329<br><br>(Los Angeles County Super. Ct. No. 24STRO04235) |

APPEAL from an order of the Superior Court of Los Angeles County, Melanie Ochoa, Judge.  Affirmed.

Zach's Law and Zachary C. Skidelsky for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\* \* \* \* \* \*

After a couple's tumultuous and extramarital affair ended, the ex-girlfriend in the affair repeatedly posted online reviews for the married ex-boyfriend's business that accused him of sexual assault.  The ex-boyfriend sought a restraining order under the Domestic Violence Prevention Act (DVPA, Fam. Code) (§ 6200 et seq.[1]) and, at the hearing, the ex-girlfriend admitted to the conduct.  On appeal, the ex-girlfriend provides an incomplete record and makes meritless arguments that ignore the law authorizing the issuance of a DVPA protective order against a qualifying person who "disturb[s] the peace" of another.  (§§ 6218, 6203, subd. (a)(4), 6320, subds. (a) & (c).)  We accordingly affirm the trial court's grant of a three-year restraining order prohibiting the ex-girlfriend from making further posts.

## FACTS AND PROCEDURAL BACKGROUND

### I.  Facts

#### A.  *The parties' tumultuous sexual relationship*

Nicole Marie Molano and Cornelius Stafford started a relationship at the end of 2021 while Molano was working for Stafford's construction business.  Stafford is married to another woman.  Until around Spring 2024, Molano and Stafford sustained an on-again-off-again affair that was, to the say the least, rocky.  Molano sometimes threatened Stafford that she would destroy his life and his business if he left her.

Molano subsequently acted on her threats.  At some point, Molano posted a photo of her bare back on the Google profile of Stafford's company with a comment "warning clients that [Stafford] was a predator."  In October 2023, Molano posted two

---

[1]     All further statutory references are to the Family Code unless otherwise indicated.

public comments on the Facebook profile of Stafford's wife (1) stating that Stafford had sexually assaulted Molano and suggesting that the wife go to the courthouse to see the criminal charges for herself, and (2) displaying a photo of bruises with an explanation that the bruises were "from your husband pinning me on the floor, pressuring me to have sex with him in his office." Molano reported the same accusations to the building manager for Stafford's business.

Molano then purported to retract her statements. She signed and had notarized a statement drafted by Stafford in which Molano denied the accusations she made to the building manager. And Molano made further posts on Stafford's wife's Facebook profile apologizing for her prior posts and explaining, "It didn't happen. I was mad. I was mad. It wasn't true." Stafford was neither arrested nor criminally charged based on any of Molano's earlier allegations.

In March 2024, Stafford took a photo of Molano "in a compromised position" to, in Stafford's own words, create "evidence" that "this is [a] cooperative" sexual relationship in case a "judge, a police officer, or anybody" later accuses him of sexual assault. The parties dispute whether Molano was aware Stafford took the photo.

**B.    *Molano's restraining order petition***

Molano filed a petition for a domestic violence restraining order against Stafford based on allegations of sexual assault. The trial court denied the petition in May 2024.[2] As the parties were leaving the courthouse following the court's ruling, Molano

---

[2]    Molano also pursued a small claims action against Stafford; she lost.

became "belligerent" toward Stafford. Later that day, she sent him a text message saying he is "going to pay big time."

### C. *Molano's comments against Stafford's business*

In the weeks that followed, Molano (and occasionally her friends) posted several negative reviews of Stafford's company on various websites:

-- On June 9, 2024, Molano posted a Yelp review stating, "Predator. Manipulator. Physically and sexually abusive. And now trying to blackmail me with pics. Currently pressing charges. Do not let this creep in your home. Really sick person." A nearly identical one-star review was posted under a different name.

-- On June 11, 2024, Molano posted a comment to a work-related photo on Stafford's Facebook page stating, "You're going to prison."

-- On an unknown date, Molano posted another Google review stating "Invasion of privacy. Took naked pics without consent and is trying to blackmail. Sexually, physically abusive. Gaslighting. Manipulative. Narcissist. He has multiple sexual harassment cases and pending charges."

-- On July 17, 2024, Molano posted another Yelp review stating: "If you look up [Stafford], the owner of the company, he took inappropriate pics of me without permission. That's invasion of privacy, sextortion, and against the law. You can look up the court case yourself. I submitted one of the inappropriate pics as evidence. Ladies, stay away from this creep." Yelp reported that 174 users read the review.

4

## II.   Procedural Background

### A.   *Stafford's restraining order petition*

Stafford filed his own petition for a domestic violence restraining order against Molano on June 14, 2024.[3]  The petition is not in the record on appeal.

### B.   *Hearing*

A hearing on Stafford's petition was held over the course of several days in July, August, and September 2024.  However, the record on appeal contains the transcript of only the last day of testimony (September 20, 2024), which resumed Stafford's testimony from a prior session.  Transcripts from the other sessions and the exhibits admitted at the hearing are not in the record on appeal.

On that last day, Molano freely admitted to authoring the posts, including some by aliases.[4]  Also that day, Molano sought a continuance so that a former co-worker she had subpoenaed could appear to testify about being harassed by Stafford.  The court denied the continuance, as the hearing had already been continued several times and the co-worker's testimony was not relevant because any harassment by Stafford "wouldn't be a

_____

[3]   Stafford has also sued Molano for defamation in a separate lawsuit.  After he filed the DVPA petition and served his lawsuit, Molano posted another review stating, "Owner assaulted me and took inappropriate pics of me and is trying to file a defamation case when I literally have a video and recordings.  He's just mad nobody will want to work with him, especially women.  Don't let the fake ratings below fool you."

[4]   Stafford's counsel tried to introduce evidence of Molano's emails and negative reviews directed against the counsel's law firm, but the trial court excluded that evidence.

justification" for Molano's conduct alleged as the basis for Stafford's petition (namely, the repeated postings).

## C. *Ruling and appeal*

On September 26, 2024, the trial court issued a restraining order in favor of Stafford[5] by enjoining Molano from making any public posts about Stafford and his business. The court found that Molano's conduct in "publicly posting allegations of sexual misconduct by [Stafford] on his business websites and wife's public Facebook page, is conduct that would destroy the mental or emotional calm of [Stafford]," and thus "disturb[ed] [Stafford's] peace," which is a basis for relief under the DPVA. The court explained that its finding was independent of whether Stafford had sexually assaulted Molano. When Molano stridently announced that she was "going to go public with this regardless," the court extended the duration of the restraining order from one year to three years.

Molano timely appealed.

## DISCUSSION

Molano argues that the trial court erred in issuing the domestic violence restraining order against her because (1) the court should have granted her request to continue the hearing so a co-worker could testify about Stafford's harassment, and (2) the court's evidentiary rulings were improper. We review each of these decisions by the trial court for an abuse of discretion.[6] (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1495

---

[5] The restraining order also protects Stafford's wife.

[6] While we apply the substantial evidence standard of review to the extent we are called upon to review the trial court's factual findings, Molano does not challenge any of the court's findings of fact in this case. (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 12.)

(*Nadkarni*) [issuance of restraining order]; *Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420 [same]; *Estate of Smith* (1973) 9 Cal.3d 74, 81 [denial of a continuance]; *People v. ConAgra Grocery Products Co.* (2017) 17 Cal.App.5th 51, 153-154 [same]; *Loy v. Kenney* (2022) 85 Cal.App.5th 403, 406 [evidentiary rulings]; *People v. Powell* (2018) 5 Cal.5th 921, 961 [same].) Even if the court abused its discretion in making an evidentiary ruling, reversal is warranted only if "it is . . . reasonably probable that admission of the [evidence] would have affected the outcome" of the proceeding. (*People v. Cudjo* (1993) 6 Cal.4th 585, 612; Evid. Code, § 354.)

## I. The DVPA, Generally[7]

The DVPA empowers a trial court, upon "reasonable proof of . . . past . . . acts of abuse," to enjoin conduct that constitutes "abuse." (§§ 6300, 6218, subd. (a).) As relevant here, "abuse" includes conduct that "disturb[s] the peace of the other party"— that is, conduct that "destroys the mental or emotional calm of the other party." (§§ 6203, subds. (a)(4) & (b), 6320, subds. (a) & (c); *Nadkarni, supra*, 173 Cal.App.4th at p. 1497.) Even speech otherwise protected by the First Amendment may be enjoined if it "disturb[s] the [petitioning party's] peace." (*Bassi v. Bassi* (2024) 101 Cal.App.5th 1080, 1104-1105; *In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1428 ["prohibiting [husband] from disseminating the contents of [wife's] phones does not amount to a prohibited restraint of protected speech because [husband's] conduct constituted 'abuse' under the DVPA"]; *Phillips v. Campbell* (2016) 2 Cal.App.5th 844, 853-854 [restraining boyfriend from posting "photographs, videos, or

---

[7] Molano's brief cites to provisions governing civil harassment restraining orders; those provisions are irrelevant.

information about [girlfriend] to any internet site" does not violate the First Amendment "'because [boyfriend's] ability to continue to engage in activity that has been determined after a hearing to constitute abuse [under the DVPA] is not the type of "speech" afforded constitutional protection'"]; *Nadkarni*, at pp. 1498-1499 [allegations that husband accessing and disclosing private e-mails disturbed wife's peace could constitute abuse to support temporary restraining order].)

## II.   Refusal to Continue the Hearing Again to Allow Co-Worker to Testify

The trial court did not abuse its discretion in refusing to continue the hearing to allow Molano's co-worker to testify because that testimony was irrelevant.  Molano proffered that the co-worker's testimony would substantiate her claim that Stafford was the wrongdoer in their relationship.  But the issue at the hearing was whether *Molano*'s posts had destroyed *Stafford*'s mental or emotional calm.  Who was in the right or wrong in the relationship generally is irrelevant to that question.

Molano responds with what boils down to two arguments.  First, she argues that the co-worker's testimony would have "lent independent credibility" to Molano's "broader narrative" of "Stafford's predatory behavior."  Again, what mattered to this case was *Molano*'s conduct in making the postings, Molano *admitted* to making those postings, and the trial court found Molano to be credible in making those admissions.  Second, Molano argues that "me too" evidence is admissible in hostile work environment cases.  This is true (see, e.g., *Alexander v. Community Hospital of Long Beach* (2020) 46 Cal.App.5th 238, 261), but irrelevant because Stafford's request for a DVPA

8

restraining order was not an employment case by Molano against Stafford.

## III.  Evidentiary Rulings

The trial court did not abuse its discretion in making any of the evidentiary rulings Molano challenges on appeal.  While Molano vaguely refers to "various evidentiary objections" by Stafford that were erroneously sustained by the court, she presents reasoned argument challenging only two rulings— namely, the court's rulings precluding Molano from (1) testifying that Stafford's building manager "warned [her] about [Stafford]" being a "predator," and (2) impeaching Stafford with his prior testimony from the earlier hearing on *Molano's* restraining order petition.  (See *Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1207 ["When an appellant raises an issue 'but fails to support it with reasoned argument and citations to authority, we treat the point as waived'"]; Cal. Rules of Court, rule 8.204(a)(1)(B).)  The building manager's statement was properly excluded as irrelevant because, as explained above, whether Stafford was a "predator" is not pertinent to whether Molano disturbed Stafford's peace.  (Evid. Code, § 350; see *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 330 [exclusion of evidence upheld if evidence inadmissible for any reason].)  And the prior testimony from the hearing on Molano's restraining order petition was actually introduced during Stafford's redirect testimony (and, as it turns out, was *consistent* with his testimony at the hearing on *his* petition).

Molano resists this conclusion.  She argues that the trial court was required, under Code of Civil Procedure section 527.6, subdivision (i) and related caselaw applicable to civil harassment restraining orders (*Duronslet v. Kamps* (2012) 203 Cal.App.4th

9

717, 728-730), to "receive any testimony that is relevant," to "make an independent inquiry," and to admit all hearsay. We reject this argument because this dispute does not involve a civil harassment restraining order; instead, it involves a request for a restraining order under the DVPA, where the hearsay rule continues to apply. (See, e.g., *Molinaro v. Molinaro* (2019) 33 Cal.App.5th 824, 828, fn. 3 [trial court applied hearsay rule in DVPA hearing]; *M.S. v. A.S.* (2022) 76 Cal.App.5th 1139, 1142 [same].) She also argues that trial courts considering DVPA petitions involving self-represented litigants (as Molano was before the trial court) must use "expedited and simplified procedures," and must take "a far more active" and somewhat "inquisitorial" role. (*S.A. v. Maiden* (2014) 229 Cal.App.4th 27, 40-41; *Ross v. Figueroa* (2006) 139 Cal.App.4th 856, 861, 866.) But that admonition does not absolve trial courts from following the rules of evidence, including the most fundamental evidentiary principle that evidence be relevant before it is admitted.

## DISPOSITION

The order granting Stafford's restraining order petition is affirmed. Stafford is entitled to his costs, if any, on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P.J.
HOFFSTADT

10

We concur:

_____, J.

MOOR

_____, J.

KIM (D.)