[No. B062451. Second Dist., Div. Three. Feb. 9, 1993.]

Estate of BELDON KATLEMAN, Deceased.
CAROLE KATLEMAN, Petitioner and Respondent, v.
ARTHUR J. CROWLEY, Objector and Appellant.

**COUNSEL**

Crowley & Cuneo and Sarah J. Hoover for Objector and Appellant.

Hufstedler, Kaus & Ettinger, Warren L. Ettinger, Dan Marmalefsky and Mark R. McDonald for Petitioner and Respondent.

**OPINION**

**CROSKEY, J.**—Arthur J. Crowley (Arthur), the major beneficiary under the will of Beldon Katleman (Beldon), deceased, appeals from the order of the superior court that Carole Katleman (Carole) is entitled to share in the estate as a pretermitted spouse pursuant to Probate Code section 6560.[1] Arthur's major contention is that, pursuant to section 6561, subdivision (a)

---

[1]Unless otherwise noted, further statutory references are to the Probate Code. Section 6560 provides:

"Except as provided in Section 6561, if a testator fails to provide by will for the testator's surviving spouse who married the testator after the execution of the will, the omitted spouse shall receive a share in the estate consisting of the following property in the estate:

"(a) The one-half of the community property that belongs to the testator under Section 100.

"(b) The one-half of the quasi-community property that belongs to the testator under Section 101.

"(c) A share of the separate property of the testator equal in value to that which the spouse would have received if the testator had died intestate, but in no event is the share to be more than one-half the value of the separate property in the estate."

(which denies a pretermission claim by a spouse if it appears from the will that the testator intentionally failed to provide for the spouse)[2] and section 21303 (which recognizes the enforceability of a "no contest" clause),[3] Carole may not share in the estate as an omitted spouse because she initially contested Beldon's will, rather than immediately asserting a pretermission claim under section 6560. Arthur relies upon the "no contest" clause in Beldon's will which expressly disinherited "any devisee, legatee or beneficiary under this Will, or any legal heir of mine or person claiming under any of them," if such person contested the will.

We will conclude that a pretermission claim prosecuted by an omitted surviving spouse, even though subsequent to an unsuccessful will contest, is not defeated by the will's no contest clause *unless* such clause clearly establishes that, at the time the will was executed, the testator: (1) *contemplated* the possibility of a later marriage and (2) *intended* to disinherit the later acquired spouse. As the no contest clause before us fails to satisfy either of these requirements, and because the prosecution of a will contest cannot defeat *established* pretermission rights, we will affirm the trial court's order.

### FACTUAL AND PROCEDURAL BACKGROUND

Beldon and Carole were first married in 1973 but they divorced in 1975. Arthur was Beldon's best friend and his next-door neighbor during these years and until Beldon's death.

On January 2, 1976, Beldon executed a will, in which he bequeathed $10,000 to Gomelia Baker, a servant of his mother's, and left the balance of

---

[2]Section 6561 provides:

"The spouse does not receive a share of the estate under Section 6560 if any of the following is established:

"(a) The testator's failure to provide for the spouse in the will was intentional and that intention appears from the will.

"(b) The testator provided for the spouse by transfer outside the will and the intention that the transfer be in lieu of a testamentary provision is shown by statements of the testator or from the amount of the transfer or by other evidence.

"(c) The spouse made a valid agreement waiving the right to share in the testator's estate."

[3]Section 21303 provides:

"Except to the extent otherwise provided in this part, a no contest clause is enforceable against a beneficiary who brings a contest within the terms of the no contest clause."

his estate, valued in excess of $10 million at the time of his death,[4] in trust for his mother for the remainder of her life, then to Arthur, who was also the named trustee. Beldon specifically disinherited Diane Harriet De Shong, his adult daughter from a previous marriage, and her two sons. Paragraph TENTH of the will read as follows:

"[1] Except as otherwise provided in this Will, I have intentionally and with full knowledge omitted to provide for my heirs.

"[2] If any devisee, legatee or beneficiary under this Will, or any legal heir of mine or person claiming under any of them, shall contest this Will or attack or seek to impair or invalidate any of its provisions, in that event I specifically disinherit each such person, and all legacies, bequests, devises and interests given under this Will to such person shall be revoked and such person shall receive nothing from my estate, and the provisions of this Will shall be carried out as though such person had predeceased me leaving no issue."

In 1980, Beldon and Carole remarried. Beldon's mother died in 1982. By 1988, Beldon and Carole were again discussing divorce, although Carole did not consider these discussions to be serious. Beldon died on September 28, 1988, without having revoked his 1976 will.

Beldon's 1976 will was submitted for probate on October 4, 1988. On October 28, 1988, Carole filed a contest of the will, in which Beldon's daughter later joined, contending probate should be denied on the grounds, among others, that Beldon had been unduly influenced and defrauded by Arthur in the execution of the will. Carole filed her statement of interest in the estate as an omitted spouse under section 6560 on November 30, 1988, in response to a petition for determination of entitlement to estate distribution, which was filed by Keith Desser, who alleged he was Beldon's illegitimate son.

The will contest was litigated at length and was ultimately unsuccessful. On August 3, 1990, after a 14-day trial, the 1976 will was admitted to probate.

---

[4] The estate apparently dwindled to somewhat less than $8 million by the time the court's order granting Carole a share in it was entered.

Trial was held on Carole's statement of interest on July 29, 1991. In a tentative statement of decision, issued on August 12, 1991, the court found Carole entitled to her share of Beldon's estate as an omitted spouse under section 6560. The court reasoned that (1) under *Estate of Duke* (1953) 41 Cal.2d 509 [261 P.2d 235], *Estate of Axcelrod* (1944) 23 Cal.2d 761 [147 P.2d 1], and *Estate of Shannon* (1990) 224 Cal.App.3d 1148 [274 Cal.Rptr. 338], words such as "heirs" and "heirs at law" in a *disinheritance* clause are not sufficient to defeat the claims of a pretermitted spouse under section 6560, and (2) no reason appeared why a different standard should apply where a no contest clause is at issue. The court concluded that under *Estate of Duke, supra,* and *Estate of Axcelrod, supra,* the minimum threshold for sufficient specificity required the presence of terms establishing the testator contemplated a future marriage and intentionally disinherited the future spouse.

The court made findings of fact that Beldon was not thinking of Carole or contemplating remarriage to her when he executed the 1976 will, was not aware "of the possible and problematical entry of Carole into the classes of persons towards whom the no contest clause was directed," and in the end forgot about the 1976 will. For this reason, the court found the language in paragraph TENTH of the will did not refer to Carole with sufficient clarity to establish she was among the category of persons whom Beldon intended to disinherit absolutely, or to disinherit if they contested his will.

The trial court agreed that Carole's will contest appeared to have been vindictive, but concluded that Arthur's remedy was a malicious prosecution action, not enforcement of the will's no contest clause. The court reasoned that in a malicious prosecution action, a jury could determine the appropriate penalty. The court stated it was unwilling to impose a multimillion dollar penalty without hearing all the evidence on the issue of Carole's vindictiveness.

Arthur moved to reopen the cause to present additional evidence that Beldon at no time forgot about his 1976 will and that Carole's will contest was motivated by vindictiveness. That motion was denied,[5] and on November 13, 1991, the court granted Carole's petition to share in the estate under section 6560. This timely appeal followed.

---

[5]However, the court deleted from its final statement of decision, filed December 10, 1991, the finding that Beldon forgot about the will. In other respects, the final statement of decision was identical to the tentative statement.

Arthur contends that: (1) the trial court erred by failing to give effect to Beldon's intent, clearly expressed in the will, to disinherit persons who contested the will; (2) Carole was equitably estopped from claiming a share in Beldon's estate as a pretermitted spouse after vindictively contesting his will; and (3) the court abused its discretion when it declined to reopen the proceedings to hear additional evidence.

DISCUSSION

1. *Carole's Pretermission Rights Are Not Affected by the Unsuccessful Will Contest.*

The interpretation of a will is an issue of law, which this court independently determines. (*Estate of Dodge* (1971) 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385]; *Poag* v. *Winston* (1987) 195 Cal.App.3d 1161, 1173 [241 Cal.Rptr. 330].) Here, it was stipulated between the parties that Carole remarried Beldon after the execution of his 1976 will and was his surviving spouse. This stipulation established that Carole had a statutory right under section 6560 to share in Beldon's estate unless, as provided in section 6561: (1) Beldon intentionally failed to provide for her and this intention appeared from the will; (2) he provided for her by a transfer outside the will; or (3) Carole made a valid agreement waiving her right to share in Beldon's estate.

However, the stipulation of the parties disposed of the last two of these possibilities. The parties agreed that (1) Carole had not validly waived her right to share in Beldon's estate and (2) Beldon did not provide for Carole outside of his will. Thus, the threshold issue for determination is whether it "appears from the will" (§ 6561, subd. (a)) that Beldon intentionally failed to provide for Carole. If not, then we must determine, in view of Carole's unsuccessful will contest, whether the no contest clause can nonetheless operate to defeat her pretermission rights.

a. *Impact of the Disinheritance Clause.*

Arthur contends that an intent not to provide for Carole appears in paragraph TENTH of the will. Under well established authority, the disinheritance clause in paragraph TENTH of the will plainly does not refer to Carole

with adequate specificity so as to overcome her rights as an omitted spouse. The clause does not demonstrate that Beldon contemplated a future marriage or that he intended to disinherit an after acquired spouse.

In order for a testator to disinherit an heir who might otherwise assert a pretermission claim (i.e., a surviving after acquired spouse or afterborn child) the intent to disinherit such heir must appear "in strong and convincing language" on the face of the will. (*Estate of Gardner* (1978) 21 Cal.3d 620, 623 [147 Cal.Rptr. 184, 580 P.2d 684]; *Estate of Smith* (1973) 9 Cal.3d 74, 78-79 [106 Cal.Rptr. 774, 507 P.2d 78]; *Estate of Torregano* (1960) 54 Cal.2d 234, 249 [5 Cal.Rptr. 137, 352 P.2d 505, 88 A.L.R.2d 597]; *Estate of Axcelrod, supra,* 23 Cal.2d at p. 768; *Estate of Hassell* (1914) 168 Cal. 287 [142 P. 838]. See generally 12 Witkin, Summary of Cal. Law (9th ed. 1990) Wills and Probate, §§ 35-46.) ■ If a testator expresses an intent to disinherit his or her "heirs," "legal heirs," "relatives" and the like, such language is generally found sufficient to disinherit a child who was alive at the time the will was executed or a surviving spouse who was then married to the testator. (*Estate of Gardner, supra,* 21 Cal.3d at p. 622; *Estate of Duke, supra,* 41 Cal.2d at p. 513; *Estate of Hirschi* (1980) 113 Cal.App.3d 681, 684-685 [170 Cal.Rptr. 186]. See generally, 12 Witkin, Summary of Cal. Law, *supra,* Wills and Probate, § 36.)

However, a testator's intention to disinherit his "heirs" or "legal heirs" is determined as of the date of execution of the will. A person who was not then an heir or legal heir, and whose subsequent relationship was not yet known or contemplated, could not then have been considered by the testator to be such. Thus, such a person is not considered in law to be included in the mere term "heir," or "legal heir" used in a disinheritance clause. (*Estate of Axcelrod, supra,* 23 Cal.2d at pp. 767-768; *Estate of Shannon, supra,* 224 Cal.App.3d at pp. 1153-1154.) Although broad enough to include a *present* spouse, such terms are not sufficient to show an intent to disinherit a subsequently acquired spouse, unless the will's language clearly demonstrates that the testator contemplated the possibility of a later marriage. (*Estate of Duke, supra,* 41 Cal.2d at p. 513.)

Under the foregoing principle, in *Estate of Duke, supra,* a disinheritance clause which excluded "any person who may, after the date of this will, become my heir or heirs *by reason of marriage* or otherwise" was found adequate to overcome the pretermission rights of the testator's subsequently acquired spouse. (41 Cal.2d at p. 514, italics added by the *Duke* court.)

Similarly, in *Estate of Cooper* (1983) 142 Cal.App.3d 118 [190 Cal.Rptr. 826, 38 A.L.R.4th 112], a surviving after acquired spouse's pretermission rights were found effectively overcome by a codicil, executed shortly before the couple's marriage, which stated, in part: " 'I intend to marry BERNICE SCHNEIDER in January, 1979, and this Codicil is made in contemplation of and shall not be revoked by the marriage. . . . In all other respects I confirm and republish my Will dated November 3, 1976.' " (142 Cal.App.3d at pp. 119, 121.) ▆▆▆ However, absent such an express and unambiguous intent to exclude a *future* spouse, a disinheritance clause will not overcome the claims of one who married the testator after execution of the will. (*Estate of Duke, supra,* 41 Cal.2d at p. 513; *Estate of Axcelrod, supra,* 23 Cal.2d at p. 768; *Estate of Shannon, supra,* 224 Cal.App.3d at pp. 1153-1154.)

### b. *Impact of the No Contest Clause and the Will Contest*

As the language of the disinheritance clause does not establish Beldon had in mind a future spouse when he executed the will, Carole's pretermitted spouse claim is defeated if and only if the no contest clause can be found to manifest such an intent. ▆▆▆ Arthur contends generally that a no contest clause can be found to express, in and of itself, a testator's intention not to provide for a surviving spouse or child who is mentioned nowhere else in the will, if such heir contests the will. Arthur argues, in effect, that a no contest clause operates as a kind of conditional disinheritance clause that expresses an intention not to provide for heirs, who might otherwise have pretermission rights, *if they contest the will.*

Respecting the particular circumstances of this case, Arthur makes the following argument: Although Carole was not a legal heir of Beldon's when he executed the will, the will plainly establishes that he intended, when he executed the will, that anyone (1) who should be a legal heir of his at the time of his death and (2) who contested his will would take nothing by his will and would take nothing from his estate. Carole was a legal heir when Beldon died, and she deliberately and, Arthur argues, vindictively contested the will. She thus brought herself within the terms of the no contest clause, even if she could not otherwise have been excluded from inheriting under the terms of the disinheritance clause.

▆▆▆ There seems little doubt that a no contest clause, by its terms, can establish an intentional failure by the testator to provide for a surviving spouse or child who is not otherwise mentioned in the will. (See, e.g., *Van Strien* v. *Jones* (1956) 46 Cal.2d 705, 707-708 [299 P.2d 1]; *Estate of Hirschi, supra,* 113 Cal.App.3d at pp. 685-686; *Estate of Brown* (1958) 164 Cal.App.2d 160, 163-164 [330 P.2d 232].) It has been said that "[n]o-contest

clauses precluding heirs as a class from participating are in effect both no-contest and disinheritance provisions." (*Estate of Leonetti* (1981) 115 Cal.App.3d 378, 383 [171 Cal.Rptr. 303]; see also *Estate of Torregano, supra*, 54 Cal.2d at p. 253.) Thus, in *Estate of Hirschi, supra*, 113 Cal.App.3d 681, the Court of Appeal found the decedent's will expressed an intent not to provide for her granddaughter, where the will contained a disinheritance clause which merely expressed an intent not to provide for "any other person, not specifically named herein . . . ," and also contained a no contest provision by which $1 was given to "any person" who should "claim any portion of my estate by reason of relationship" and to "any person who, if I died intestate, would be entitled to any part of my Estate. . . ." (113 Cal.App.3d at pp. 685-686.)[6] However, a no contest clause can effectively disinherit an heir not mentioned elsewhere *only* if such heir is mentioned in the no contest clause itself with the same level of specificity that would be required in a general disinheritance clause. (*Estate of Smith, supra*, 9 Cal.3d at p. 80; *Estate of Torregano, supra*, 54 Cal.2d at p. 248; *Van Strien* v. *Jones, supra*, 46 Cal.2d at pp. 707-708; *Estate of Price* (1942) 56 Cal.App.2d 335, 338-339 [132 P.2d 485].)

Our Supreme Court analyzed the effect of a no contest clause upon the rights of an unmentioned child in *Estate of Torregano, supra*, 54 Cal.2d 234 and *Estate of Smith, supra*, 9 Cal.3d 74. In *Torregano*, the testator declared in his will that he had no children, left his entire estate to his brother, and included a no contest clause by which he "g[a]ve, devise[d] and be-queath[ed] to any person or persons who may contest this my Last Will and Testament, or assert any claim to share in my estate by virtue of relationship or otherwise the sum of One Dollar ($1.00) each in settlement of their said claim or claims." (54 Cal.2d at p. 239.) The Supreme Court upheld the trial court's admission of extrinsic evidence to prove Torregano did not intend to disinherit his daughter Gladys Torregano Stevens. (*Id.* at pp. 247-248.) Such extrinsic evidence established that Torregano was an African-American man, who was born in the southern part of the United States in 1882, grew up there, married, and in 1904 fathered one child, his daughter Gladys. When Gladys was approximately two years old, Torregano left his family behind, took up permanent residence in San Francisco, California, "commenced to pass for white," and became a successful attorney. In 1915, Torregano's

---

[6]Section 90, in effect when *Hirschi* was decided, provided: " 'When a testator omits to provide in his will for any of his children, *or for the issue of any deceased child*, . . . unless it appears from the will that such omission was intentional, such child *or such issue* succeeds to the same share in the estate of the testator as if he had died intestate.' " (*Estate of Hirschi, supra*, 113 Cal.App.3d at p. 684, original italics omitted, new italics added; Stats. 1931, ch. 281, § 90, p. 592; Recommendation Proposing New Probate Code, 20 Cal.Law Revision Com.Rep. (1990) pp. 1485-1486. See also 12 Witkin, Summary of Cal. Law, *supra*, Wills and Probate, § 30, ¶ 4.)

mother visited him and, during the visit, told him Gladys and his wife were dead, although they were not. Upon the mother's return home, she told the wife and daughter that Torregano was dead. (*Id.* at pp. 241-242.)

Based upon the foregoing evidence, the Supreme Court reversed the trial court's dismissal of Gladys's petition for determination of heirship and found Gladys was a pretermitted heir, entitled to receive her intestate share of Torregano's estate. The court concluded the no contest clause's general reference to " 'any person or persons who may contest . . . or assert any claim . . . by virtue of relationship or otherwise . . . .' " was too broad to disinherit a child whom Torregano *believed to be dead.* (*Estate of Torregano, supra,* 54 Cal.2d at p. 248.) Further, the court found Gladys was "obviously not included" in the class of persons left $1 if they contested the will. This the court found to be so "for the obvious reason" that Gladys was not a contestant, but a petitioner for distribution, claiming to be a pretermitted heir, "and such a person has never been held to be a contestant. [Citations]" (*Id.* at p. 251.)

In *Estate of Smith, supra,* 9 Cal.3d 74, the Supreme Court reaffirmed the holding of *Torregano.* In *Smith,* the testator, who had been married three times, declared in his will that he had no children and was divorced from his third wife; made specific gifts to a sister, a niece and a grandniece; left the remainder of his estate to his brother; and provided that " 'if any of my friends or relatives challenge this my last will and testament I give to everyone of them the sum of $1.00 only.' " (9 Cal.3d at p. 77.) The Supreme Court found the no contest clause did not effectively disinherit Diedre Smith, Smith's unmentioned daughter by his second marriage, because the daughter did not contest the will, but only made a claim upon the estate as a pretermitted heir, and because Smith's declaration that he had no children did not establish an intent to disinherit. (*Id.* at p. 80.)

This case differs from *Torregano* and *Smith* in that here Carole *did* file and pursue an unsuccessful will contest. Did that act, as Arthur contends, bring her within that group of persons disinherited under the terms of the no contest clause? We think not.

Arthur argues that even though Carole may not have been sufficiently described by the no contest clause, that clause plainly expressed an intent to disinherit *anyone* who might contest the will. The courts, he argues, are obligated to give effect to that plainly expressed intent.

We note initially that the no contest clause in Beldon's will does not by its express terms apply to "anyone" but only to "any devisee, legatee or beneficiary under this Will, or any legal heir of mine or person claiming under any of them" who might contest the will. However, we may assume for the sake of argument that by listing all categories of persons who might be expected to contest the will—indeed all categories of persons likely to have standing to contest the will—Beldon intended to reach *anyone* who might contest it. Such assumption does not help Arthur.

█ It is, of course, a cardinal rule of construction that a testator's intent, as manifested by the terms of the will, must be given effect, and technical rules of construction must yield to an intention clearly expressed. (*Estate of Salmonski* (1951) 38 Cal.2d 199, 209 [238 P.2d 966]; *Estate of Axelrod, supra,* 23 Cal.2d at p. 766; *In re Kitchen* (1923) 192 Cal. 384, 388 [220 P. 301 [30 A.L.R. 1008].) However, the testator's intent must be ascertained "in the light afforded by certain rules of interpretation which must prevail where a contrary intent does not clearly appear on the face of the will." (*Estate of Axelrod, supra,* 23 Cal.2d at p. 766.) █ In this case, language in Beldon's will which is relied upon to establish an intent to disinherit anyone who might contest his will must be interpreted in light of well established authority which holds that a generally phrased no contest clause, leaving nothing or a nominal sum to persons identified by phrases such as "anyone who may contest this will," is inadequate to satisfy the requirements of the pretermission statutes. (*Estate of Gardner, supra,* 21 Cal.3d at p. 623; *Estate of Leonetti, supra,* 115 Cal.App.3d at p. 383.)

As we have already concluded, the specific terms used in the no contest clause of Beldon's will are inadequate to satisfy section 6561. Where this is the case, a supposed underlying intent to disinherit will contestants in general cannot be assumed in order to overcome Carole's pretermission rights. This is true for at least two interrelated reasons: (1) a no contest clause cannot affect *intestate* rights and (2) the strong policy reasons for recognizing pretermission rights would be undermined by such use of a will's "no contest" restriction.

A pretermitted spouse's right to share in an estate under section 6560 is essentially a right to take an *intestate* share, as limited by the statute, and is therefore simply not impaired by a no contest clause, which only reaches devises under the will. (*Estate of Baker* (1982) 131 Cal.App.3d 471, 484 [182 Cal.Rptr. 550]; *Estate of Holtermann* (1962) 206 Cal.App.2d 460, 473 [23 Cal.Rptr. 685]; *Estate of Munson* (1958) 164 Cal.App.2d 146, 150-151 [330 P.2d 302]; *Estate of Mathie* (1944) 64 Cal.App.2d 767, 780-782 [149 P.2d 485]. Cf. *Estate of Barnes* (1965) 63 Cal.2d 580, 583 [47 Cal.Rptr. 480,

407 P.2d 656] [*disinheritance* clause operates only upon gifts under the will itself or to obviate a claim of pretermission].)[7] Thus, the provision of the no contest clause stating that a contestant "shall receive nothing from my estate" cannot reach out beyond the will to defeat Carole's right to share in the estate independently of the will under section 6560, once such right has been established.

Such a result is consistent with the important policy underlying the pretermission statutes. ■ That policy guards against the omission of surviving spouses and children by reason of oversight, accident, mistake, or unexpected change of condition. (*Estate of Torregano, supra,* 54 Cal.2d at pp. 248-249, and cases cited therein; *Estate of Shannon, supra,* 224 Cal.App.3d at p. 1152.) It is for this reason that a surviving spouse's rights under section 6560 may be defeated by nothing less than a clear manifestation on the face of the will to do so, " 'regardless of what may have been the wishes of the [decedent].' " (*Estate of Shannon, supra,* 224 Cal.App.3d at p. 1153; *Estate of Basore* (1971) 19 Cal.App.3d 623, 627-628 [96 Cal.Rptr. 874].)

The policy favoring the protection of surviving spouses and children would be undermined were we to recognize Arthur's argument that a no contest clause can operate to disinherit any person who contests the will, including a presumptive heir who is *nowhere* mentioned in the will. The intent of the pretermission statutes is to assure that a spouse or child *cannot be disinherited unless an express intention to do so appears in the will,* or other exempting conditions exist. It would be inconsistent with this clear policy if a spouse or child could be *conditionally* disinherited by a general provision, such as a no contest clause, that was drafted without any need of focusing upon its potential effect upon an unknown spouse or child.

---

[7]A no contest clause is defined by statute as "a provision in an otherwise valid instrument that, if enforced, would penalize a beneficiary if the beneficiary brings a contest." (§ 21300.) The statutory definition of a no contest clause as a "penalty" implies that a no contest clause *takes away* or *reduces* the gifts of persons *provided for* in the will if they contest it. The 1990 report of the Law Revision Commission recommending proposed legislation governing no contest clauses, which legislation was adopted by the Legislature effective July 1, 1991 (West's Ann. Prob. Code (1991 ed.) Historical and Statutory Notes to § 21300), defines such a clause as "a clause to the effect that a person who contests or attacks the instrument or any of its provisions takes nothing *under the instrument* or takes a reduced share." (Recommendation Relating to No Contest Clauses, 20 Cal. Law Revision Com. Rep. (1990) p. 11, italics added.) Arthur contends that, because a "beneficiary" is defined in section 24 to include heirs at law (§ 24, subd. (a)) as well as devisees under a will (§ 24 subd. (b)), the use of that term in the statutory definition of a no contest clause implies a no contest clause reaches not only devises under the will, but also intestate rights. This construction of a no contest clause not only is strained, but is at odds with established authority holding that a no contest clause does not affect intestate rights. On the general question of the effect of no contest clauses, see Leavitt, *Scope and Effectiveness of No-Contest Clauses in Last Wills and Testaments* (1963) 15 Hastings L.J. 45.

 Compared to the right of children and spouses not to be inadvertently omitted from a deceased parent's or spouse's estate, a testator's right to protect his will by means of a no contest, or in terrorem, clause is not strongly favored by the law. Indeed, although no contest clauses are enforceable (§ 21303) and have been found "not against public policy" (*Lobb* v. *Brown* (1929) 208 Cal. 476, 484 [281 P. 1010]; *Estate of Fuller* (1956) 143 Cal.App.2d 820, 824 [300 P.2d 342]; see also *Estate of Friedman* (1979) 100 Cal.App.3d 810, 814 [161 Cal.Rptr. 311]), they are strictly construed (§ 21304), and no wider scope is given them than is plainly required by the language of the will. (*In re Kitchen* (1923) 192 Cal. 384, 389-390 [220 P. 301, 30 A.L.R. 1008]; *Poag* v. *Winston, supra,* 195 Cal.App.3d at p. 1173; *Estate of Fuller, supra,* 143 Cal.App.2d at p. 824.) A will cannot "plainly require" enforcement of a no contest penalty against a surviving spouse or child—persons whom the law *presumes* a testator would wish to provide for—if such spouse or child is not provided for, mentioned or otherwise identified anywhere in the will. Where such a presumptive heir is not mentioned in the will, the will contains no evidence the testator was thinking of such heir when he or she executed the will. Absent such evidence, it cannot be concluded that disinheritance of the heir is "plainly required" either unconditionally or upon any condition.

 Carole, as an omitted spouse within the terms of section 6560, became entitled to a specified *intestate* share of Beldon's estate. No exception to that pretermission right has been established. Therefore, her intestate share in Beldon's estate is unaffected by her unsuccessful contest of his will.

*2. Carole Was Not Estopped by Virtue of the Will Contest From Subsequently Asserting Her Pretermission Rights Under Section 6560.*

 Arthur next contends that principles of estoppel should preclude Carole from asserting her rights as a pretermitted spouse after gratuitously contesting Beldon's will. Unfortunately for Arthur, the plain language of section 6560 forbids any such preclusion. Nor is such a preclusion necessary to protect the rights of testators and beneficiaries under wills. The statute provides that "[e]xcept as provided in section 6561," a pretermitted spouse who married the testator after execution of the will *shall* receive his or her intestate share of the testator's estate. Section 6561 provides for exceptions to section 6560 *only* where: (a) the testator intentionally did not provide for the spouse and that intent appears from the will; (b) the testator provided for

the spouse outside the will, or (c) the spouse validly waived the right to share in the testator's estate. One or more express exclusions from a statute indicate such exclusions are to be the only exclusions. (*Strang* v. *Cabrol* (1984) 37 Cal.3d 720, 725 [209 Cal.Rptr. 347, 691 P.2d 1013]; *Salem* v. *Superior Court* (1989) 211 Cal.App.3d 595, 600 [259 Cal.Rptr. 447].) Accordingly, where the Legislature has not provided for an exclusion from section 6560 based upon principles of estoppel, it is not appropriate for us to judicially create one.

Arthur objects, however, that a spouse having rights under section 6560 should not be allowed to violate a valid no contest clause with impunity. To this objection, there are two answers. First, the creation of an additional exception to section 6560 is a matter to be addressed to the Legislature. Secondly, as the trial court indicated in its statement of decision, an adequate remedy for a frivolous or vindictive will contest is available in the form of an action for malicious prosecution.[8]

Because Carole was not, as a matter of law, estopped by virtue of the will contest from asserting her rights as a pretermitted spouse, the trial court properly denied Arthur's motion to reopen the proceedings on Carole's statement of interest to receive evidence that the will contest was vindictive. Despite the court's comment that it did not believe it had before it sufficient evidence of vindictiveness to justify a multimillion dollar forfeiture, it is not to be inferred the court was obliged to consider additional evidence on that issue. Taken in the context of the court's earlier remark that a malicious prosecution action was Arthur's proper remedy, the comment on the inadequacy of existing evidence only meant a malicious prosecution action would provide a forum in which all the evidence could be weighed. At any rate, as we have held above, no amount of evidence of vindictiveness could have defeated Carole's claim under section 6560, because the Legislature has not provided for an exception to a pretermitted spouse's rights on any basis but those provided in section 6561, and the filing of a will contest, however motivated, is not among those exceptions.

The only act by Carole which could have abrogated her right to share in Beldon's estate under section 6560 would have been the execution of a valid agreement waiving that right. (§ 6561, subd. (c).) It was stipulated that she made no such waiver. Further, Beldon neither provided for her outside of his will (§ 6561, subd. (b)) nor adequately expressed in the will an intent not to

---

[8]Alternatively, the trial court might have made an award of sanctions against Carole if it found her action to be in bad faith. (Code Civ. Proc., § 128.5; *Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 873-874 [254 Cal.Rptr. 336, 765 P.2d 498].) Additional remedies are unnecessary and inappropriate.

provide for her (§ 6561, subd. (a)). Thus, Carole is not estopped from sharing in the estate as an omitted spouse.

## Disposition

The order declaring Carole entitled to share in the estate under section 6560 is affirmed.

Klein, P. J., and Hinz, J., concurred.

A petition for a rehearing was denied March 8, 1993, and appellant's petition for review by the Supreme Court was denied June 2, 1993.