FILED

AUG 01 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                                    )  BAP Nos.   15-1367-DTaJu
                                          )             15-1378-DTaJu
FRANCES ELIZABETH PASS,                   )             (related appeals)
                                          )
                Debtor.                   )  Bk.  No.  13-16171-B-7
_____    )
JAMES E. SALVEN, CHAPTER 7                 )
TRUSTEE,                                   )
                                          )
                Appellant,                )
                                          )
v.                                        )  **O P I N I O N**
                                          )
ALADINO JOSEPH GALLI;                     )
FRANCES ELIZABETH PASS,                   )
                                          )
                Appellees.                )
_____    )

Argued and Submitted on June 23, 2016
at Sacramento, California

Filed - August 1, 2016

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable W. Richard Lee, Bankruptcy Judge, Presiding

---

Appearances:   Trudi G. Manfredo, argued for Appellant James L.
               Salven; Appellee Aladino Joseph Galli argued pro
               se.

---

Before: DUNN, TAYLOR and JURY, Bankruptcy Judges.

DUNN, Bankruptcy Judge:

Frances Elizabeth Pass and Aladino Joseph Galli commenced a chapter 13[1] case in 2009, while they were married but intending to separate. In 2002, they had recorded a declaration of homestead as to their residence in Fresno, California. They also claimed their residence as exempt under California's automatic homestead exemption when they filed their bankruptcy case. During the pendency of the case, Pass and Galli terminated their marriage and purported to divide their marital property without seeking relief from the automatic stay. The joint case was severed, Pass converted her case to chapter 7, and Galli allowed his case to be dismissed. After conversion, Pass amended her exemptions to claim a homestead exemption in a different home, while Galli continued to reside in the previously claimed homestead. Over the objection of the chapter 7 trustee James Salven ("Trustee"), Pass' exemption was allowed. The Trustee elected to pursue Galli's home instead through an adversary proceeding, but the bankruptcy court entered an order and judgment declaring, among other things, that Galli's declaration of homestead created an interest in the home that the Trustee could not avoid. The Trustee appeals the order and judgment separately. With respect to both appeals, we AFFIRM on the

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

alternative basis that Galli has a valid automatic homestead exemption under California law.

## I. FACTUAL BACKGROUND

Before they filed their petition, Pass and Galli were married and living together in a home on Manila Avenue in Fresno, California (the "Manila Avenue House"). They had been living there at least since 2002, at which time they filed a declaration of homestead in relation to the Manila Avenue House as allowed by California law ("2002 Homestead Declaration"). See California Code of Civil Procedure ("CCP") § 704.920. Then, in the fall of 2009, Pass purchased a house in Coalinga, California (the "Coalinga House") after accepting a position in her employer's Coalinga office. Pass and Galli had decided to end their marriage, and Pass began refurbishing the Coalinga House with the intention of moving into it permanently.

Meanwhile, Pass and Galli filed a joint chapter 13 petition on December 30, 2009. In their bankruptcy schedules, as amended in February 2010, they claimed a homestead exemption in the Manila Avenue House pursuant to CCP § 704.730, applicable in bankruptcy by virtue of § 522(b)(3)(A). The stated value of the claimed exemption was $43,764.64. In 2010, while their joint bankruptcy case was in progress, Pass and Galli obtained a judgment of legal separation in the Superior Court of Fresno County ("Separation Judgment"). Though Pass and Galli did not request or obtain relief from the automatic stay, the Separation Judgment purported to award the Manila Avenue House to Galli as his sole and separate property. Accordingly, Pass changed her address of record with the bankruptcy court to indicate that the

3

Coalinga House was her residence.

In December 2011, still without having requested relief from the automatic stay, Pass and Galli executed and recorded a grant deed, purporting to transfer the Manila Avenue House to Pass and Galli as joint tenants ("Grant Deed"). Pass later changed her address of record again, indicating that the Manila Avenue House was her residence. In April 2013, the state court entered a judgment of marital dissolution, which purported to grant Pass and Galli each a one-half interest in the Manila Avenue House ("Dissolution Judgment"). Once again, relief from stay was neither sought nor granted.

In September 2013, Pass moved the bankruptcy court to sever the joint chapter 13 case and to convert her case to chapter 7. The court granted both requests. Pass was assigned to a new chapter 7 case, while Galli remained in the original chapter 13 case. Pass filed a new amendment to her schedules, now claiming an exemption in the Coalinga House under CCP § 704.730 in the amount of $75,000. As for Galli, it appears that he stopped making payments under the chapter 13 plan, and his case was dismissed.

The Trustee was appointed to administer Pass' chapter 7 estate. He objected to Pass' claimed exemption in the Coalinga House, alleging that she was not in fact living at the Coalinga House on the date of the order for relief in the original joint case. The Trustee noted that, on the joint petition and schedules, both Pass and Galli had indicated they resided at the Manila Avenue House.

After an evidentiary hearing on the Trustee's objection, the

4

bankruptcy court entered a memorandum decision and an order overruling the objection. The court was persuaded by Pass' testimony that she left the Manila Avenue House and moved into the Coalinga House, with no intention ever to return, hours before the joint petition was filed. The order overruling the Trustee's objection and allowing Pass' exemption in the Coalinga House was entered on November 3, 2014, and was not appealed.

Meanwhile, the Trustee had also begun efforts to sell the Manila Avenue House. He made a motion under § 363(f) to sell the Manila Avenue House free and clear of any interest of Galli, notwithstanding a new declaration of homestead Galli had filed in January 2014 ("2014 Homestead Declaration"). Shortly before a hearing on the § 363(f) motion, the Trustee filed an adversary proceeding seeking (i) to avoid the property transfers effected by the Separation Judgment, the 2011 Grant Deed and the Dissolution Judgment, as well as Galli's 2014 Homestead Declaration; (ii) to determine the nature, extent and validity of interests in the Manila Avenue House; and (iii) for authority to sell the Manila Avenue House.

The court held its hearing on the § 363(f) motion on May 29, 2014. Along with the Trustee's counsel, Pass appeared through counsel in support of the motion. Galli appeared in opposition to the motion, which he aptly characterized as "a motion to take [his] home." At the hearing on the § 363(f) motion, the court commented on the muddled status of the ex-spouses' respective property interests and exemption rights. While acknowledging the Trustee's contention that the postpetition title transfers were void due to the automatic stay, the court concluded that "the

5

status of title right now is there's a co-owner to this house, and you can't sell co-owned property without an adversary proceeding." Thus, the court refused to grant the § 363(f) motion without first resolving the title and exemption issues through the adversary proceeding.

In December 2014, the Trustee moved for summary judgment in the adversary proceeding based on stipulated facts agreed to by Galli.[2] Among other things, they stipulated that the transfers of the Manila Avenue House had been made without relief from the automatic stay and that the Manila Avenue House was community property as of the December 2009 petition date. Based on those stipulations, the Trustee argued that no dispute existed as to any material fact, and he was entitled as a matter of law to judgment on the following points:

1. The transfers made in the Separation Judgment, the Grant Deed and the Dissolution Judgment were void, because they were in violation of the automatic stay.

2. The transfers made in the Separation Judgment, the Grant Deed and the Dissolution Judgment should be avoided because they were made in violation of Pass and Galli's confirmed chapter 13 plan, as well as the bankruptcy court's General Order 05-03, which prohibited such property transfers without the chapter 13

---

[2] The Trustee failed to include a copy of the motion for summary judgment in his excerpts of the record. We have exercised our discretion to take judicial notice of papers filed with the bankruptcy court. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1988); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

6

trustee's consent or court order.

3. The transfers made in the Dissolution Judgment and the 2014 Homestead Declaration were "void as being post petition transfers."

4. The Manila Avenue House was community property and therefore property of the Pass bankruptcy estate.

5. Galli had no entitlement to a homestead exemption in the Manila Avenue House.

The court set out its findings and conclusions regarding the summary judgment motion in a memorandum decision. Based on the parties' stipulation, the court concluded that there was no dispute as to any issue of material fact. As to the community property issue, the court concluded that Galli had conceded the point, and no dispute remained. But, as to the issue of Galli's claimed homestead exemption, the court concluded that Galli had a valid "homestead interest" that could not be avoided.

The bankruptcy court went on to explain that it based its decision on the 2002 Homestead Declaration filed by Pass and Galli. Noting that a declaration of homestead prevents judgment liens from attaching to the declared homestead unless there is sufficient equity to pay the homestead exemption in full, and that the Trustee's liquidation powers "are derived from those of a creditor who holds a judgment lien," the court concluded that the Trustee could not sell the Manila Avenue House without paying Galli the value of his homestead exemption. The court rejected the Trustee's argument that the declaration of homestead cannot prevent an involuntary sale. Instead, the court reasoned that the proposed sale could be analyzed as either voluntary or

7

involuntary, but "[e]ither way, . . . the Trustee will have to pay Galli the value of his Declared Homestead . . . ."

Based on the conclusions laid out in the memorandum decision, the bankruptcy court entered an order disposing of the summary judgment motion ("Summary Judgment Order"), which provided as follows:

> IT IS HEREBY ORDERED that the motion for summary judgment is GRANTED in so far as the Trustee seeks a declaration that the [Manila Avenue House] is still community property of the Galli/Pass marriage and still property of this bankruptcy estate.
> IT IS FURTHER ORDERED that the Motion for summary judgment is DENIED with respect to the Trustee's request that the [Manila Avenue House] may be sold free and clear of Galli's homestead interest with no compensation to Galli.

Two weeks later, the court entered judgment consistent with the Summary Judgment Order ("Judgment"). The Judgment first declared all of the following void: (1) the purported transfer of the Manila Avenue House to Galli as his sole and separate property as part of the Separation Judgment; (2) the Grant Deed executed by Galli purporting to transfer an undivided 50% interest in the Manila Avenue House to Pass; (3) the Dissolution Judgment, to the extent that it purported to grant Pass and Galli each a 50% interest in the Manila Avenue House; and (4) Galli's 2014 Homestead Declaration. Accordingly, the Judgment declared that the Manila Avenue House remained both community property and property of the estate. Finally, the Judgment declared that Galli had a "homestead interest" by virtue of the 2002 Homestead Declaration, and the Trustee had no authority to sell the Manila Avenue Property without compensating Galli for his interest.

The Trustee appealed separately from the Summary Judgment

8

Order and the Judgment.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Whether the 2002 Homestead Declaration operates to prevent the Trustee from selling the Manila Avenue House without compensating Galli.

2. Whether Galli is entitled to an automatic homestead exemption under California law.

## IV. STANDARD OF REVIEW

We review de novo the bankruptcy court's decision to grant or deny summary judgment. Heers v. Parsons (In re Heers), 529 B.R. 734, 740 (9th Cir. BAP 2015); Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 823 (9th Cir. BAP 2006), aff'd, 506 F.3d 956 (9th Cir. 2007). If the appellant is entitled to summary judgment, we may reverse and grant summary judgment in favor of the appellant. Nat'l Motor Freight Traffic Ass'n v. Superior Fast Freight, Inc. (In re Superior Fast Freight, Inc.), 202 B.R. 485, 487 (9th Cir. BAP 1996). We likewise apply de novo review to the bankruptcy court's interpretation of state law. Diaz v. Kosmala (In re Diaz), 547 B.R. 329, 333 (9th Cir. BAP 2016).

## V. DISCUSSION

We agree with the bankruptcy court that the facts are not in dispute. Thus, the Trustee is entitled to summary judgment only if he can show he is "entitled to judgment as a matter of law." Civil Rule 56(a); Rule 7056; Anderson v. Liberty Lobby, Inc., 477

9

U.S. 242, 249 (1986). The only provisions of the Summary Judgment Order and the Judgment that are challenged on appeal are those concerning Galli's "homestead interest." We limit our review to those issues.

The bankruptcy court premised its decision regarding the homestead issue on the protections accorded to declared homesteads, as opposed to the automatic homestead exemption. The Trustee argued before the bankruptcy court and argues on appeal that neither benefit was available to Galli. In the discussion that follows, we are mindful of the imperative under California law to construe exemption statutes liberally in favor of the debtor. Wells Fargo Fin'l Leasing, Inc. v. D & M Cabinets, 177 Cal. App. 4th 59, 73 (2009). At the same time, we must not "rewrite the California legislature's scheme for homestead protection." Redwood Empire Production Credit Assoc. v. Anderson (In re Anderson), 824 F.2d 754, 759 (9th Cir. 1987).

**A.   There are two varieties of homestead protection under California law.**

We begin our discussion with a brief review of the nature of California homestead law. Under California law, two species of homestead protection are available to judgment debtors, the "automatic" (or Article 4) homestead exemption and the "declared" (or Article 5) homestead protection,[3] respectively. These protections are available under different circumstances, they

---

[3]   The California statute does not use the word "exemption" to describe the declared homestead protection. Indeed, as discussed below, a declaration of homestead does not create any exemption directly except in the proceeds of a voluntary sale.

10

serve different purposes and they confer different rights on debtors. "[T]here is **no overlap** between these rights." Id. at 756 (emphasis added). Depending on the circumstances, a given debtor may be entitled to one or the other, or to both, or to neither. Id.

### 1. The Article 4 automatic homestead exemption

The Article 4 automatic homestead exemption is applicable under California law when a person's homestead is damaged, destroyed, taken by eminent domain or sold involuntarily in satisfaction of a debt. CCP § 704.720(b). For purposes of bankruptcy law, the creation of the bankruptcy estate upon the filing of the petition is treated as equivalent to an involuntary sale. In re Diaz, 547 B.R. at 334. Thus, the automatic homestead exemption is applicable in bankruptcy cases.

This is an "exemption" in the familiar bankruptcy law sense: it prevents the judgment creditor (or the bankruptcy trustee) from forcing a sale of the homestead unless there is sufficient equity to pay the debtor the amount of the exemption. The debtor is entitled to be paid ahead of the judgment creditor or trustee. CCP § 704.850(a)(1)-(4). The exemption protects a "homestead," defined as a dwelling in which the debtor or the debtor's spouse resided on the date the judgment creditor's lien attached (in bankruptcy, the petition date) and has resided continuously until the court's determination that the dwelling is a homestead. CCP § 704.710(c). Thus, this protection is available in bankruptcy if the debtor was living in the home on the petition date. The exemption is "automatic" in the sense that it requires no affirmative act by the debtor to make it effective; rather, it

11

applies automatically to any dwelling that meets the definition.

**2.  The Article 5 declaration of homestead**

If, however, the debtor chooses to record a declaration of homestead with the county recorder's office, the debtor is entitled to additional protections, including, without limitation, the following:

**i.  Lien Attachment:** If a debtor is entitled to an automatic homestead exemption, the filing of a declaration of homestead prevents judgment liens from attaching to the portion of the debtor's equity in the homestead covered by the exemption. CCP § 704.950(c).  Note that this provision does not independently create an impediment to a forced sale.  See CCP § 704.920.[4]  It shields the exempt equity against the future attachment of judgment liens.  See Katz v. Pike (In re Pike), 243 B.R. 66, 70 (9th Cir. BAP 1999).

**ii.  Voluntary Sale:** If a homesteader voluntarily sells the declared homestead, the proceeds of that sale are themselves exempt for six months.  CCP § 704.960(a).  This protects debtors from the danger that eager creditors will pounce as soon as the homestead is reduced to cash.  Under this provision, the debtor has six months to reinvest that cash before creditors can reach it.

This protection differs from the lien attachment protection in two important ways.  First, it creates an actual exemption (in

---

[4]  To the extent the homestead property remains a "dwelling," as defined in CCP § 704.710(a), all Article 4 protections in relation to forced sale apply.  See CCP § 704.970(b).

12

proceeds of a voluntary sale), rather than merely enhancing the automatic exemption. Second, it can exist even if a debtor is not entitled to an automatic exemption, for instance, if the debtor does not satisfy the continuous residency requirement. In re Anderson, 824 F.2d at 757 (after homestead declaration is recorded, "moving away from the homestead does not destroy the [voluntary sale] exemption status").

As noted above, the protections pertaining to a declared homestead are separate and distinct from the automatic homestead exemption, though a debtor may enjoy both sets of protections if he or she satisfies the requirements for both. A declaration of homestead by itself generally does not confer protections or rights in relation to a forced sale. Kelley v. Locke (In re Kelley), 300 B.R. 11, 21 (9th Cir. BAP 2003); In re Anderson, 824 F.2d at 758.

**B.    The declared homestead protections in this case**

Because the filing of a bankruptcy petition is equivalent to a forced sale, it is typically the automatic exemption, not the declared homestead protection, that applies to sales by bankruptcy trustees. In re Kelley, 300 B.R. at 17. This proposition would seem to render the 2002 Homestead Declaration irrelevant to the summary judgment motion, but the bankruptcy court gave a number of reasons for concluding otherwise.

First, the bankruptcy court reasoned that "the Trustee's powers to liquidate estate assets are derived from those of a creditor who holds a judgment lien. § 544." Salvi v. Galli (In re Pass), Adv. No. 14-01056 at 12 (Bankr. E.D.Cal. October 14, 2015). Because a homestead declaration shields the homestead

13

from the attachment of judgment liens, the court concluded that the 2002 homestead declaration likewise shielded the Manila Avenue Property from the Trustee's reach. We reject this conclusion. To begin with, although § 544 empowers the Trustee to exercise the rights of prepetition lienholders for some purposes, not all of "the Trustee's powers to liquidate estate assets" are derived in this way. Section 363 permits trustees to use, sell or lease property belonging to the bankruptcy estate, regardless of whether any prepetition creditor could have done so.

It is true that, for purposes of allowing or disallowing state law exemptions, courts treat the filing of the bankruptcy petition as the date on which a hypothetical judgment lien attaches. It does not follow that the Trustee's power over estate assets constitutes an actual lien that must "attach" before it can be exercised. The lien attachment restrictions arising from the declaration of homestead do not prevent the Trustee from exercising his sale powers.

Second, the bankruptcy court pointed to the following language from CCP § 704.960(b):

> If the proceeds of a declared homestead are invested in a new dwelling within six months after the date of a voluntary sale **or within six months after proceeds of an execution sale** or of insurance or other indemnification for damage or destruction are received, the new dwelling may be selected as a declared homestead by recording a homestead declaration within the applicable six-month period. In such a case, the homestead declaration has the same effect as if it had been recorded at the time the prior homestead declaration was recorded.

(emphasis added). The bankruptcy court interpreted the emphasized language as "protecting" the proceeds of an

14

involuntary sale, contrary to our statement in Kelley that "the additional benefits conferred in Article 5 would benefit [the debtor] only in the situation of a voluntary sale." In re Kelley, 300 B.R. at 21 (emphasis in original).

The "additional benefits" we referred to in Kelley were, primarily, the six-months exemption provided by Article 5 for proceeds of a voluntary sale (and further encompassing extension of protections if the proceeds are timely reinvested in a new homestead). The quoted statutory language does not create an entitlement to proceeds, nor does it create an exemption in proceeds. A comparison of subsections (a) and (b) of CCP § 704.960 makes this conclusion inescapable. Subsection (a) reads: "If a declared homestead is voluntarily sold, the proceeds of sale **are exempt . . .**" (emphasis added). Subsection (b), as quoted above, does not use the word "exempt" at all. Instead, it provides that **if** a declared homestead is sold involuntarily, **and** the debtor for some independent reason is entitled to receive proceeds from that sale (perhaps because he also enjoys an automatic homestead exemption, or perhaps because the sale generates a surplus), **and** the debtor reinvests those proceeds in a new homestead, **and** the debtor records a new homestead declaration, **then** the new declaration will relate back to the date of the original homestead declaration. If the debtor is not otherwise entitled to receive proceeds, this provision does not change that situation.

Finally, the bankruptcy court suggested that the Trustee's proposed sale of the Manila Avenue House might alternatively be considered a voluntary sale, because the Manila Avenue House "is

15

property of the estate over which the Trustee is effectively the owner." Salvi v. Galli (In re Pass), Adv. No. 14-01056 at 10 (Bankr. E.D.Cal. October 14, 2015). We must reject this proposition as inconsistent with our previous decisions holding that the filing of the bankruptcy petition itself constitutes a "forced sale" for exemption purposes. In re Diaz, 547 B.R. at 334; In re Kelley, 300 B.R. at 21; In re Pike, 243 B.R. at 70.

The bankruptcy court declined to decide whether Galli might be entitled to an automatic homestead exemption under Article 4. However, in order to determine whether the undisputed facts entitled the Trustee to judgment as a matter of law, we must turn next to this issue.

**C. The automatic homestead exemption is available to Galli.**

When Pass and Galli initially filed their joint chapter 13 petition, they asserted an entitlement to an automatic homestead exemption in the Manila Avenue House. There is no question that this exemption is available to bankruptcy debtors, and there is no dispute that Galli was entitled to it at the time. Since the filing of the petition, Pass and Galli have divorced, and Galli's bankruptcy case has been dismissed. Thus, in order to determine whether Galli is entitled to an automatic homestead exemption in the Manila Avenue House, we must answer two questions: First, whether Galli, as a non-debtor, may assert any exemption in property of the Pass bankruptcy estate; and second, whether Galli is entitled to a homestead exemption under California law.

**1. Galli's non-debtor status does not preclude his claiming an exemption in estate property.**

In answering the first question, we confront a dearth of

16

published decisions involving circumstances analogous to those present here. We decided a related question in Burman v. Homan (In re Homan), 112 B.R. 356 (9th Cir. BAP 1989). There, the non-debtor wife of a chapter 7 debtor attempted to claim a state-law homestead exemption in a home that was property of the bankruptcy estate. The debtor had claimed no exemption in the home and had asserted unrelated federal exemptions instead. We held that the debtor's decision not to claim an exemption "binds" the non-filing spouse. Id. at 359. Because he had elected not to claim the home as exempt, his wife was unable to claim an exemption of her own. Id.

What is true of spouses, however, is not necessarily true of ex-spouses. In Homan, we recognized that Congress designed the exemption provisions of the Code "to encourage spouses to file jointly." Id. at 360. We noted that the debtor's wife was seeking "to do as a nondebtor spouse what she would be prohibited from doing as a joint debtor," namely asserting an exemption that was inconsistent with the list of exemptions already asserted by the debtor. Id. This concern is absent here, as Galli is no longer married to Pass. The congressional goal of encouraging joint filings has no applicability to ex-spouses, since ex-spouses are not permitted to file jointly. Also inapplicable to Galli is the community property discharge, which we identified as a counterbalancing advantage to the otherwise "hard result" of denying non-debtor spouses any say in the selection of exemptions. Id. In short, with respect to Galli, we see neither the statutory concern that animated the reasoning of Homan nor the primary factor that mitigated the harshness of its result.

17

We therefore decline to extend Homan beyond the situation to which it was addressed, namely the attempt by a non-filing, current spouse of a debtor to assert exemptions to which he or she would not be entitled as a joint debtor.

The mere fact that Galli is not the debtor does not prohibit him from asserting a state law exemption in property of the bankruptcy estate. Instead, we must look to California law to determine whether the undisputed facts entitle Galli to an automatic homestead exemption in the Manila Avenue House.

**2. Galli is entitled to an automatic homestead exemption.**

Even if Galli's non-debtor status does not prevent him from asserting a homestead exemption, the Trustee nevertheless argues that he is not entitled to exempt the Manila Avenue House. The Trustee correctly points out that a debtor's entitlement to claim exemptions is determined as of the original petition date. Moffatt v. Habber (In re Moffatt), 119 B.R. 201, 204 n.3 (9th Cir. BAP 1990); Cisneros v. Kim (In re Kim), 257 B.R. 680, 685 (9th Cir. BAP 2000). Thus, because Pass and Galli were married when they filed their joint petition, the Trustee argues that both of them are limited to the exemption rights they enjoyed as a married couple on the petition date. Since California law prohibits spouses from claiming exemptions in more than one homestead, and since Pass successfully defended her exemption in the Coalinga House, the Trustee asks us to conclude that Galli may not claim an exemption in the Manila Avenue House.

Though it has a certain syllogistic plausibility, we must reject this argument. The principle that exemption rights are determined as of the petition date cannot be stretched so far as

18

to require that a debtor's marital status on the petition date is fossilized for the duration of the case.  Even less should former joint debtors whose cases have been severed and dismissed be yoked, for state-law exemption purposes, to their ex-spouses who remain in bankruptcy.  To hold otherwise would flout the well-established principle that "bankruptcy courts [should] avoid incursions into family law matters . . . ."  Allen v. Allen (In re Allen), 275 F.3d 1160, 1163 (9th Cir. 2002)(quoting MacDonald v. MacDonald (In re MacDonald), 755 F.2d 715, 717 (9th Cir. 1985).  We must determine Galli's homestead rights under California law based on his marital status as of the present, not as of the petition date.[5]

Under California law, as the Trustee notes, where spouses reside in separate homesteads, only one of the homesteads is exempt.  CCP § 704.720(c).  If Pass and Galli were still married, this would appear to be dispositive.  However, "after the judgment of dissolution or legal separation, each former spouse has the right to declare a homestead on any property in which he or she has an interest and actually resides."  12 W. Scott Shepard and Karl E. Geier, Cal. Real Est. § 43:40 (4th ed. 2016).  Moreover, each former spouse "qualif[ies] for the automatic exemption for property on which he or she resides . . . ."  Id.  We agree with the bankruptcy court that there is no dispute that

---

[5]  The Trustee's counsel suggested during oral argument that this approach would permit postpetition exemption planning by spouses, who could obtain a divorce after filing in order to augment their exemptions.  We are disinclined to allow such a speculative concern to drive us to the draconian result the Trustee seeks, particularly as there is no indication in the record that Pass and Galli sought their divorce for any collusive or otherwise improper purpose.

19

Galli was living at the Manila Avenue House on the date the joint petition was filed.[6] Thus, the bankruptcy court properly concluded that the Trustee may not sell the Manila Avenue House without compensating Galli.

The Trustee's final argument is that, if Galli has a "homestead interest," the bankruptcy court was required to determine the dollar value of that interest. As the bankruptcy court correctly noted, however, this relief was not requested in the Trustee's complaint, and it is not necessary to make this determination unless and until the Trustee attempts to sell the Manila Avenue House.

## VI. CONCLUSION

Based upon the foregoing, we conclude that the bankruptcy court erred in concluding that the 2002 Homestead Declaration prevented the Trustee from selling the Manila Avenue House. We conclude, however, that Galli is entitled to an automatic homestead exemption in the Manila Avenue House. Consequently, we AFFIRM both the Summary Judgment Order and the Judgment.

---

[6] The Trustee's power, if any, to sell the Manila Avenue House arises from the filing of the original joint petition. For purposes of determining a debtor's homestead exemption rights under California law, bankruptcy courts treat the filing of the petition as both the attachment of a hypothetical judgment lien and, simultaneously, as the court determination that the dwelling is a homestead. In re Diaz, 547 B.R. at 335. There appears to be no dispute in this appeal that the same analysis applies to the determination of a non-debtor's exemption rights in estate property. We assume, without deciding, that this is correct.

The Trustee's counsel further conceded at oral argument that the Trustee's proposed sale should be treated as involuntary, hence capable of triggering the automatic homestead exemption. Again, as the issue is not disputed, we need not decide it and will treat the proposed sale as an involuntary or forced sale under California law.